CHARLES DILLINGHAM ET AL. V. J. M. SCALES AND WIFE.

No. 2897.

1. **Objectionable Remarks of Counsel.**—In the closing address to the jury by counsel for the plaintiffs suing a railway company for damages for causing the death of their son while an employe of the corporation he used the following language: "Gentlemen, they talk about the corporation! What is the corporation? Go to New York City and there view Huntington in his princely mansion, surrounded by all that wealth can give—there is the corporation. What does he care for this case? What does he care for the lives of these boys? There is only one thing to make him care, and that is twelve men of this county." The jury returned a verdict for $7000 damages. *Held,* in view of the large verdict the court can not say that the objectionable words did not improperly prejudice the jury, and the judgment is therefore reversed.

2. **Excessive Verdict.**—This court will not reverse a judgment because excessive when there is no satisfactory mode of computing the damages and the case was fairly submitted to the jury.

APPEAL from Navarro. Tried below before Hon. Sam. R. Frost.

This is an appeal from a judgment for $7000 rendered in the District Court of Navarro County against appellants, receivers of the Houston & Texas Central Railway Company, and in favor of J. M. Scales and his wife R. S. Scales, for damages for negligently causing the death of N. E. Scales, the son of plaintiffs and an employe of the defendants. The deceased at his death was 24 years of age. The father was 57 and the mother 54 years of age. Their family consisted of five unmarried daughters. Other facts appear in the opinion.

*Barry & Etheredge,* for appellants.— 1. When counsel for the plaintiffs in a damage suit against a corporation resorts to statements concerning and abuse of the corporation outside of and unwarranted by the evidence and wholly unprovoked by defendants, and which is in its nature calculated to inflame the minds and passions of the jury, and in response the jury return an excessive verdict, the same will be set aside as being the result of improper and illegal influences. Railway v. Kutac, 72 Texas, 643; Railway v. Cooper, 70 Texas, 67; Railway v. Jarrell, 60 Texas, 267; Willis v. McNeil, 57 Texas, 475.

2. A verdict which greatly exceeds the amount of damages pleaded and proved, when there has been without provocation improper language used by the party in whose favor the verdict is rendered such as to inflame the passions and prejudices of the jury, will be set aside.

*Simpson & Neblett,* for appellees.— 1. Conceding it to be the duty of the court to reverse a cause where improper appeals to prejudice cause an excessive verdict, yet if verdicts which possibly might be larger than the court would have given are to be reversed upon mere excerpts purporting to be taken from the address of counsel, without regard to context, con-

nection, or provocation, and only resting on the affidavit, then this court will have added an element of uncertainty to verdicts measured only by the elasticity of the conscience of the attorney seeking a reversal.

2. Where improper language is used in argument to the jury and the same is withdrawn by counsel and the jury asked not to consider it, the judgment will not be reversed unless it clearly appears that the verdict is excessive and the language used is the cause of it. Blum v. Simpson, 66 Texas, 89; Willis & Bro. v. Lowry, 66 Texas, 542; Railway v. Irvine, 64 Texas, 529; Barber v. Hutchins, 66 Texas, 323; Railway v. Larkin, 64 Texas, 454; 1 Thomp. on Trials, sec. 960.

3. Where the matter of inflammatory remarks is directly and specially considered by the court in a motion for a new trial, and the court with all the facts before it overruled said motion, the judgment will not be reversed unless manifestly wrong. Radford v. Wood, 65 Texas, 477; 1 Thomp. on Trials, sec. 964.

HENRY, ASSOCIATE JUSTICE.—This suit was brought by appellees against appellants, as receivers of the Houston & Texas Central Railway Company, to recover damages caused by the death of their son while employed as a fireman on one of their engines.

The only errors insisted upon relate to the refusal of the court to grant defendants a new trial on the grounds of language used by plaintiffs' attorney in his closing address to the jury, and that the verdict was excessive.

At the time of the son's death he was 24 years old. His father was then aged 57 and his mother 54 years.

The son was industrious and his habits were moral. He was earning from $60 to $65 per month.

The father had but little property and labored to support his family, consisting of some unmarried daughters in addition to his wife.

The evidence shows that the son was contributing from his wages from $150 to $250 yearly toward the support of the family, and that he had declared his purpose to continue to furnish aid.

The verdict was for $7000.

It is shown by a bill of exceptions that while plaintiffs' attorney was making his closing argument to the jury he used substantially the following language:

"Gentlemen, they talk about the corporation! What is the corporation? Go to New York City and there view Huntington in his princely mansion, surrounded by all that wealth can give—there is the corporation. What does he care for this case? What does he care for the lives of these boys? There is only one thing to make him care, and that is a jury of twelve men of this county." To which language defendants' counsel then and there excepted; whereupon the attorney remarked to the jury, "Well, I withdraw what was said about Huntington and his mansion."

· It is well settled that plaintiffs were not entitled to recover anything but the pecuniary value to them of the life of their son.

On account of there being no exact method of estimating the amount of such damage provided by the law, we do not feel authorized to set aside every verdict that is for a greater amount than we would have given as an original question, or when we can not account for it from the evidence when the question has been properly submitted to the jury. But in all such cases there must be no ground. to believe that the verdict has been influenced from any improper cause. It must appear that the cause has been fairly submitted to the jury upon the law and evidence, and there must be no ground for charging that the verdict has been influenced by extraneous considerations or by passion, partiality, or prejudice. The verdict is larger than we can account for upon any view of the evidence. The remarks of counsel excepted to were not jusified or called for by anything legitimately belonging to the case. We can not say that they did not improperly prejudice the jury. We can not say that they exercised no influence on the jury. If they exercised any it was an improper one. The fact that we have no means, and that the jury have none, of arriving at the exact amount of damages in such cases emphasizes the importance of guarding the minds of the jury from all misleading and improper influences and appeals.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered October 17, 1890.