## HOME LIFE & ACCIDENT CO. v. JORDAN. (No. 8529.)

(Court of Civil Appeals of Texas. Dallas. May 7, 1921. Rehearing Denied June 11, 1921.)

**1. Master and servant ⓒ⇒396—Compensation claim held within district court's jurisdiction.**

In an injured employé's suit to set aside a decision of the Industrial Accident Board and to recover compensation under the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), petition *held* to show jurisdiction in the district court, in that it stated a cause of action for compensation for total incapacity under section 10 (article 5246—18), or for partial incapacity, or total and partial incapacity combined, under sections 11, 11a (articles 5246—19, 5246—20), and not a cause of action for compensation for loss of index finger, or for ankylosis of such finger under section 12 (article 5246—21), which would have confined recovery to less than $500.

**2. Pleading ⓒ⇒214(1)—Allegations of fact taken as true on demurrer.**

Allegations of fact in petition must be treated as true on demurrer.

**3. Master and servant ⓒ⇒401—Compensation claimant's petition for doctor's bills held insufficient.**

In an injured employé's action under the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), a petition which does not allege that there was a failure to furnish reasonable medical aid when needed, or within a reasonable time after notice of the injury, nor that the doctor's charges therefor are reasonable, does not state a cause of action for the recovery of such charges.

**4. Appeal and error ⓒ⇒1040(10)—Overruling of exception to allegations held harmless in view of judgment.**

Overruling of exception to allegation as to doctor's bills incurred *held* harmless in view of plaintiff's failure to recover therefor.

**5. Trial ⓒ⇒125(4)—Remarks of counsel in argument to jury held to inflame jurors' minds against defendant.**

In injured employé's action for compensation against the employer's insurer, employé's counsel's remarks during argument that the plaintiff was an old man without money and without friends, who had suffered a terrible accident, whose health was broken, and whose nervous system was impaired, and that the jury was his only place of refuge, and that the defendant was a rich and powerful insurance company, an artificial person without a soul, that he had represented insurance companies and knew all their tricks, that they hated to pay a poor man what was justly due him, and that he had never heard of an insurance company that was willing to pay an honest claim, that defendant insurance company was no exception to the rule, that plaintiff had not been represented before the Industrial Accident Board, and that the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) was one of the greatest outrages ever forced on the people of the state, *held* ground for reversal; such remarks tending to inflame the minds of the jurors against the defendant.

**6. Appeal and error ⓒ⇒207—Improper remarks of counsel available on appeal notwithstanding failure to object.**

Under Court Rules 39 and 41 (142 S. W. xiii, xiv), improper remarks of counsel in argument to jury are available on appeal, notwithstanding failure of party prejudiced thereby to object; it being the duty of the court on its own motion to confine counsel to legitimate argument.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by Charles Jordan against the Home Life & Accident Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Burgess, Burgess, Chrestman & Brundidge, of Dallas, for appellant.
John White, of Dallas, for appellee.

TALBOT, J. The appellee brought this suit against the appellant to recover the compensation due him under what is known as the Texas Employers' Liability Act or Workmen's Compensation Law of this state (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), on account of personal injuries

ⓒ⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

alleged to have been sustained as the result of an accident to him while in the employment of the Republic Box Company at Dallas, Tex. Plaintiff alleged, in substance, that the accident and injury complained of occurred on the 29th day of January, 1919, in the course of his employment with the company; that said company at that time held a policy of insurance issued by the appellant covering the Republic Box Company's employés under said act; that the injury consisted in cutting off and severing the index finger on his left hand at the distal phalange, splitting said finger, and injuring the tendons, ligaments, and nerves of his left hand and finger and left arm, and that the injuries produced traumatic rheumatism; that the finger became stiff, and that the injuries totally disabled him for work for a period of 104 weeks, from the 6th day of February, 1919; that his weekly wage was $14.42, and he was entitled to compensation of 60 per cent. thereof, or $8.65 per week for 104 weeks, from the 6th day of February, 1919, making a total of $899.60; that by reason of the policy of insurance issued by defendant, it agreed to compensate plaintiff for his said injuries under the terms of said act; that plaintiff complied with all of the terms of the said Workmen's Compensation Law to be by him complied with; that he submitted his claim to the said Industrial Accident Board, which, on May 6, 1919, heard the same, and on said date rendered its judgment as follows: That on January 29, 1919, the Republic Box Company was a subscriber to said act and carried a policy of insurance with defendant; (2) that on said date plaintiff was an employé of said box company and as such was covered by said policy of insurance; (3) that on said date, in the course of his employment, plaintiff sustained injuries in the manner and to the extent set out in the report of accident, claim for compensation, and evidence in the cause; (4) that the average weekly wage of plaintiff, at the time and prior to the injury, was $14.42, and he was therefore entitled to compensation at the rate of $8.65 per week; (5) that as a result of said injury the plaintiff lost the use of the distal phalange of his index finger of his left hand and thereby became entitled to recover compensation from defendant for the period of 15 weeks, beginning February 6, 1919, and continuing thereafter until the full period of 15 weeks have expired; (6) that John White, as his attorney before the Board, was entitled to pay for his legal services in a sum equal to 15 per cent. of the first $1,000, and 10 per cent. of any sum paid in excess of $1,000; that the Board therefore ordered defendant to pay to plaintiff the sum of $8.65 per week for the period of 15 weeks, from and after February 6, 1919, less any and all sums theretofore paid on the claim, if any, and less the attorney's fees allowed; and

further ordered defendant to pay John White, attorney, the amounts aforesaid, as attorney's fees.

Plaintiff further alleged that on May 8, 1919, he gave to all the parties interested notice that he was not willing and did not consent to abide by said final ruling and decision of said Board, and afterwards in due time filed this suit in the district court of Dallas county, Tex., having jurisdiction of the case, for the purpose of setting aside said final ruling and decision of the Board and particularly that part finding that the average weekly wage of plaintiff prior to sustaining such injury was $14.42, and to the finding awarding John White for his services equal to 15 per cent. of the sum paid on the total amount and the final awarding, and decreeing the plaintiff weekly compensation in the sum of $8.65 per week, because said finding and award are contrary to the evidence used in this case. Plaintiff further alleged that weekly payments to him would work a hardship because he was entitled to be paid $8.65 per week for 104 weeks, or $899.60, part of which was due and part to accrue, and because plaintiff owed debts of $500 incurred since his injury, also doctor's bills incurred by reason of the injury; that because defendant had not paid the weekly installment, plaintiff had elected to mature the entire claim of $899.60, and had instituted suit thereon; that he had agreed to pay his attorney, John White, 33⅓ per cent. of the recovery. Wherefore, he prayed that the final order and opinion of the Industrial Accident Board, to the extent complained of by plaintiff, be in all things set aside, and that plaintiff be awarded compensation at the rate of $8.65 per week, commencing February 6, 1919, with full payments now of the matured payments or a sum total of $899.60, and that his said attorney be decreed 33⅓ per cent. thereof, etc.

Defendant answered by plea in abatement that plaintiff's petition showed the only injury sustained by him was the loss of the third or distal phalange of his index finger on his left hand, and under section 12, pt. 1, of the Workmen's Compensation Law (article 5246—21), he was entitled to recover 60 per cent. of his weekly wages, not less than $5 nor more than $15 per week, for a period of 15 weeks, and that the district court did not have jurisdiction of said sum. Defendant also filed a general demurrer, special exceptions, and a general denial. The plea in abatement and demurrers were all overruled, to which ruling defendant excepted. Defendant specially pleaded that if plaintiff was entitled to recover, it was compensation only for the loss of the distal phalange of the index finger on his left hand, and for that he was not entitled to recover a greater sum than found by the Industrial Accident Board, as shown in plaintiff's petition,

amounting to the sum of $129.55, less $34.60 previously paid to plaintiff by defendant. It specially denied any indebtedness to plaintiff in the sum of $500 or other items claimed by him, and prayed that plaintiff be adjudged to accept the sum of $8.65 per week for 15 weeks, as found by the Industrial Accident Board.

At the trial plaintiff and defendant agreed that the following facts were true: That on January 29, 1919, plaintiff was in the employ of Republic Box Company at a wage of $2.50 per day; that notice was given to the employer within 30 days and notice of the injury and claim for compensation was filed with the Industrial Accident Board within 6 months after injury; that all parties were before the Board on the 6th day of May, 1919, on which date it rendered its decision, and that notice was given within 20 days that plaintiff refused to be bound and was not willing to accept or abide by the final ruling and decision of the Board, and that within 20 days thereafter notice was given by plaintiff to the Republic Box Company, the Board, and defendant, and suit was filed in the Forty-Fourth district court, Dallas, Tex., in the county where the injury occurred; that defendant had a policy under the terms of the Texas Employers' Liability Act, insuring the employés of the Republic Box Company at the time of and prior to the accident, and that defendant tendered payment under the terms of the award of May 6, 1919, by the Board, and offered to pay said amount; that defendant has paid the plaintiff $34.60 on his claim; that plaintiff's average weekly wage, calculated under the Compensation Law of the State of Texas, at and prior to the accident, was $14.42 per week, and that 60 per cent. thereof, the compensation, would amount to $8.65 per week, in the event injury is shown under the law by the evidence.

The case was submitted to a jury upon special issues, and upon their answer to the issues and other facts found by the court, the court gave plaintiff judgment against defendant for compensation at the rate of $8.65 per week for 75 weeks, beginning February 6, 1919, less a credit of $34.60 paid to plaintiff by defendant, aggregating $648.75; that payments accrued prior to the trial and unpaid should be paid in a lump sum with 6 per cent. interest per annum on weekly payments from date of their maturity; and that weekly payments not matured should bear interest at the same rate from their maturity. The judgment awarded John White, plaintiff's attorney, one-third of the total amount of the recovery, and directed defendant to pay him such one-third.

The defendant's motion for a new trial having been overruled, it appealed.

The first assignment of error complains of the trial court's action in overruling the defendant's plea in abatement, which was in the nature of a plea to the jurisdiction of the court; the second complains of the court's action in overruling the defendant's general demurrer to the plaintiff's petition; and the complaint of the third is that the court erred in overruling the defendant's special exception to the plaintiff's petition. These assignments present in different form substantially the same question, namely, that the district court did not have jurisdiction because, under the allegations of the petition and the law applicable thereto, the plaintiff could in no event recover as much as $500.

The propositions advanced, so far as is necessary to state, are: (1) That the district court has not jurisdiction in a suit for damages or debt where the amount in controversy is less than $500, exclusive of interest; (2) under the allegations in plaintiff's petition, and section 12, pt. 1, of the Workmen's Compensation Law of the State of Texas, upon which this suit is based, if ankylosis (total stiffness) of the index finger on plaintiff's left hand can be inferred, the limit of his recovery would be for a period of 45 weeks, at the rate of $8.65 per week, or a total of $389.25, which sum is not within the jurisdiction of the district court.

The plaintiff sought to recover not only for the visible wound inflicted upon the index finger of his left hand, but also for the injuries resulting therefrom to the tendons, ligaments, and nerves of his left hand and said finger and for traumatic rheumatism, stiffness of the finger and pain produced thereby, all of which it is alleged totally disabled the plaintiff for work for a period of 104 weeks. The Workmen's Compensation Law of this state awards to the injured employé, in lieu of all other compensation except for medical aid, hospital services, and medicines as provided for the loss of an index finger, or for ankylosis (total stiffness) of such finger, 60 per cent. of the average weekly wages during 45 weeks, and declares that the loss of the third or distal phalange of any finger shall be considered to be equal to the loss of one-third of such finger. The defendant's interpretation of the statute in question seems to be that since it fixes definite payments for definite periods for specific injuries, in lieu of all other compensation, the plaintiff can recover only the compensation given him by the statute for that specific injury, and that allegations to the effect that he sustained injuries to the tendons, ligaments and nerves of his finger, hand, and arm, and the traumatic rheumatism resulted therefrom, so incapacitating him that he was unable to work for a period of 104 weeks, and other allegations of suffering and inconvenience as a result of the specific injury, cannot be allowed to and do not increase either the amount of plaintiff's compensation or the number of weeks for which such com-

pensation is to be paid him; and it is argued by the defendant's counsel that if the allegations in the plaintiff's petition that his finger became stiff can be taken to mean that ankylosis of the joints existed as a result of the injury, even then his compensation under the law would be $8.65 per week for 45 weeks only, and the total of that sum, to wit, $389.25, would not be within the jurisdiction of the district court. The argument is not without force, but we are not prepared to agree with the conclusion expressed. Section 10 of the statute (article 5246—18) is as follows:

"While the incapacity for work resulting from injury is total, the association shall pay the injured employé a weekly compensation equal to sixty per cent. of his average weekly wages, but not more than $15.00 nor less than $5.00, and in no case shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of the injury."

[1, 2] The plaintiff alleges that the accident complained of resulted in permanent personal injuries to him; that the index finger of his left hand was cut off or split at the distal phalange, and as a direct result thereof the tendons, ligaments, and nerves of the finger and hand and arm were injured, traumatic rheumatism, stiffness of said finger and hand produced, which wholly incapacitated and disabled him for work for a period of 104 weeks. The section of the statute just quoted provides that the injured employé shall be paid the compensation therein specified regardless of the nature of his injury, so long as his incapacity for work resulting from the injury is total, not exceeding a period of 401 weeks. The alleged period of the plaintiff's total incapacity for work as a result of his injuries is 104 weeks, a far less number of weeks than the number for which compensation is allowed by section 10 of the statute, but together with the allegations of the plaintiff's petition presenting a claim for damages in amount clearly within the jurisdiction of the district court. The allegations of the petition presented questions of fact, and for the purposes of the defendant's demurrers the court had to treat them as true. Thus treated, they showed a right of recovery for a sum in excess of $500.

Again, section 11 (article 5246—19) is as follows:

"While the incapacity for work resulting from the injury is partial, the association shall pay the injured employé a weekly compensation equal to sixty per cent. of the difference between his average weekly wages before the injury and his average weekly wage earning capacity during the existence of such partial incapacity, but in no case more than $15.00 per week; and the period covered by such compensation to be in no case greater than three hundred weeks; provided that in no case shall the period of compensation for total and partial incapacity exceed four hundred and one (401) weeks from the date of the injury."

Section 11a (article 5246—20) provides that in cases of the injuries therein enumerated, the incapacity shall conclusively be held to be total and permanent, and that the enumeration shall not be taken as exclusive, but that in all other cases the burden of proof shall be on the claimant to prove that his injuries have resulted in permanent, total incapacity. The pleadings of the plaintiff, it occurs to us, present a case in which he would be entitled to compensation for a period of total incapacity or partial incapacity or total and partial incapacity combined, making it essential to determine the number of weeks of such total, partial, or combined incapacity, as shown by the evidence, not to exceed 401 weeks for total incapacity or 300 weeks for partial incapacity, or 401 for the two combined from the date of the injury, and, as said by defendant's counsel, pain resulting from the effort to work, and other disabling consequences, would be elements to be considered, and the number of weeks of total, partial, or combined incapacity could properly be submitted to the jury for its determination. In either case the amount recoverable would be within the jurisdiction of the district court.

[3, 4] The petition alleged that—

"Plaintiff has unpaid accounts, debts, which aggregate the sum of $500, due and incurred since the date of his injury by reason of plaintiff being incapacitated to work and earn money, also doctor's bills incurred by reason of treatment of his injured finger, hand, and arm, and asked judgment therefor."

These allegations were specially excepted to and the exception overruled. We think this action of the court was error. It was not alleged in this connection that the association failed to furnish reasonable aid, hospital services, and medicines, when needed, or within a reasonable time after notice to the association of the injury, nor that the charges were fair and reasonable. In the absence of such allegations, the plaintiff under the Workmen's Compensation Law showed no cause of action for the recovery of such charges or debts. The defendant, however, suffered no injury by the action of the court in this matter, for the reason that no recovery was had by the plaintiff for said alleged claim.

[5] The defendant's fourteenth assignment of error asserts that the court erred in permitting counsel for the plaintiff, in his closing argument to the jury, to indulge in improper, inflammatory, and prejudicial remarks to the jury. This assignment is well taken and will be sustained. The bill of exception shows that counsel said, in substance:

"That the jury would remember the facts; that they could see the relative position of the parties; that on one hand was his client, an

old man without money and without friends; that he had suffered this terrible accident from which he had undergone hours of excruciating pain; that his health was broken and his nervous system impaired by reason thereof; that he had not been able to engage in any kind of employment since the accident, and that the jury was his only place of refuge, and he was seeking from them the rights which had been heretofore denied; that on the other hand the defendant was a rich and powerful insurance company, an artificial person without a soul; that he had represented insurance companies and knew all their tricks; that he knew they hated to pay a poor man what was justly due him; that he had never heard of any insurance company that was willing to pay an honest claim, and that the defendant insurance company was no exception to the rule; that his heart went out to the poor man who was forced to fight a war against an insurance company; that the insurance companies had their agents everywhere, and that when the case of this plaintiff was called before the Industrial Accident Board, the defendant insurance company was represented by its agents and attorneys, and that with the testimony of hired doctors and the appeals of eloquent attorneys, the defendant insurance company induced the Industrial Accident Board to reduce plaintiff's claim to a mere pittance; that in all of these proceedings the voice of the plaintiff was not heard; that this Compensation Law is one of the greatest outrages ever forced on the people of Texas; that he did not have any money to go himself, neither did he have money to send doctors and lawyers to plead his cause; and that his only hope for justice lay in the verdict which he expected the jury to render."

[6] The court in approving the bill indorsed thereon the following:

"This bill is qualified with this statement, that no objection was made to these remarks by counsel for plaintiff save and only in this bill."

It appears that counsel made the objectionable remarks with the knowledge of the court, without rebuke or effort to restrain him. The rules promulgated for the government of the district court declare that counsel shall be required to confine the argument strictly to the evidence and to the arguments of opposing counsel (Rule 39, [142 S. W. xiii]), and the court will not be required to wait for objections to be made where the rules as to arguments are violated (Rule 41 [142 S. W. xiv). By these rules the "duty devolves affirmatively, first, upon counsel to confine his argument strictly to the evidence and to the argument of opposing counsel; second, upon the court, on its own motion, to confine counsel to this line of argument." If both the counsel who is making the argument and the court shall fail in the discharge of their duty, the rules give to opposing counsel the privilege, but do not make it his duty, to then present his point of objection. This discretion given to counsel, as to whether he will make the objection at the time, was doubtless based upon the well-known embarrassment, and often prejudice, which generally attend the interruption of argument of counsel by another. Willis & Bro. v. McNeill, 57 Tex. 465. Counsel should never endeavor to obtain a verdict by argument based upon anything other than the facts in the case and the conclusions legitimately deducible from the law applicable to them, and any other practice should be promptly repressed. "Every litigant, whether he is morally good or bad, or rich or poor, is entitled, in a court of justice, to have his rights passed upon and his evidence weighed by an unprejudiced tribunal." The evidence as to the extent or seriousness of the plaintiff's injuries and as to the number of weeks necessary to effectuate a complete recovery from the effects thereof was sharply conflicting. The record does not disclose the remarks of counsel were provoked by opposing counsel; nor is there in the evidence before us anything which warranted their inflammatory character. Jurors are disposed to regard as proper any argument which the court permits the attorneys to make, and the remarks objected to and permitted in this case were well calculated to influence the jury in resolving important issues of fact against the defendant. They could only have the effect of inflaming the minds of the jurors against the defendant, and so far exceeded the bounds of legitimate argument that they alone justify a reversal of the judgment obtained. Western Indemnity Co. v. MacKechnie, 214 S. W. 456; S. A. Pace Groc. Co. v. Guynes, 214 S. W. 794; Metropolitan St. Ry. Co. v. Roberts, 142 S. W. 44; Railway Co. v. Scott, 26 S. W. 999.

There are several other assignments of error, but they have been disposed of against the appellant by what we have already said or present no reversible error, and hence they need not be discussed. Of course, if the incapacity extends beyond one week, compensation shall begin to accrue on the eighth day after the injury.

The judgment is reversed, and the cause remanded.