DAVIS, Agent, v. HILL et al.   (No. 6833.) *

(Court of Civil Appeals of Texas.   Austin.
March 3, 1925.   Rehearing Denied
April 8, 1925.)

1. Carriers ⊜⟿229(2) — Measure of damages for negligent delay in shipping cattle, where market value shown, stated.

In action for damages from delays to shipment of show cattle where market value of cattle at destination was shown, measure of damages was difference in "market value" in condition they arrived at destination, and in which they would have been, but for negligence complained of, and a special issue submitting the difference in "value" under such circumstances as measure of damages was incorrect.

2. Carriers ⊜⟿213—Test of liability of carrier for damages for delay in shipping cattle held erroneous.

In action for damages from delays to shipment of show cattle, special issue, making test of liability of railroad its failure to carry cattle in "usual and ordinary time and manner," was erroneous, as test of liability for damages for delay is failure to transport with reasonable diligence and dispatch.

3. Trial ⊜⟿215—In suit for damages for delay, held court should have instructed jury not to consider damages resulting from cattle being kept in muddy pens by shipper.

In action for damages from delay in shipment of cattle, where undisputed evidence showed that shipper confined cattle in muddy pens for three days for purpose of making tuberculosis test, held, that court should have instructed jury, in connection with special issue as to measure of damages, that jury should not take into consideration damages resulting from confinement of cattle in such muddy pens.

4. Carriers ⊜⟿229(1)—Carrier not liable for shrinkage caused by shipper's confinement of cattle in pens.

If a shipper confines cattle in pens, causing shrinkage, carrier is not liable for such shrinkage, even though it may itself by negligent delay also cause a shrinkage.

5. Trial ⊜⟿203(1)—Parties entitled to have law applied to matters raised by pleading and evidence.

Each party to a suit is entitled to have law applied to matters of interest to each raised by pleading and evidence.

6. Trial ⊜⟿131(1)—Objection to improper argument not required.

Under district and county courts rule 41, counsel is not required to object to improper argument of opposing counsel.

7. Trial ⊜⟿125(4)—Argument, bringing before jury fact that plaintiff was poor and merited reward, held improper.

In action for damages to shipment of cattle, argument of plaintiffs' counsel that one of plaintiffs was working for wages, and had not prospered after many years of effort in trying to improve breed of cattle, thus informing jury that he was poor and merited reward for services to the country for improving breed of cattle, held improper.

Appeal from District Court, Tom Green County;   C. E. Dubois, Judge.

Action by Sam H. Hill and another against James C. Davis, Agent.   Judgment for plaintiffs, and defendant appeals.   Reversed and remanded.

C. K. Lee, of Fort Worth, and Wright & Harris, of San Angelo, for appellant.
Collins & Jackson, of San Angelo, for appellees.

BLAIR, J.   On October 18, 1919, appellees Sam H. and Will Hill shipped five cars of fat, registered Aberdeen-Angus show cattle from San Angelo, Tex., to Atlanta, Ga., and thence to Columbia, S. C., where they were intended for auction sale.   This suit, filed December 20, 1920, is for damages for injuries to said cattle, caused by certain alleged, unusual, unnecessary, and negligent delays between San Angelo and Houston, and because the cattle were negligently confined in the cars between San Angelo and Houston for more than 28 and for as much as 36 hours without being unloaded for "feed, rest, and water," and in violation of the federal laws governing such matters; that, because of such negligence, the cattle arrived at destination in bad condition, and as a result they were worth $30 per head less than what they would have been worth but for the negligence of the carrier.

Appellant answered by general denial and specially pleaded that, because of the government's use of the railroads during the war, the equipment had been greatly overburdened, and was in a demoralized and run down condition, rendering the usual and customary service impossible; that, if the cattle were injured as alleged, such was the result of the shipper's lack of care, or due to the inherent defects in the cattle themselves.

The jury found that the cattle were negligently delayed between San Angelo and Houston, which caused injury thereto at destination; that the cattle were negligently confined in the cars more than 28 and 36 hours without feed, rest, and water, which proximately caused or contributed to their injury and damage at destination.   The seventh special issue and the jury's answer thereto are as follows:

"What do you find to be the difference in dollars and cents between the value of plaintiffs' cattle in the condition in which they actually arrived at destination, at the time of their arrival, and what would have been their value at such time and place, if they had been carried in the usual and ordinary time and manner and without negligence?"   Answer: "$2,500."

---

⊜⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction May 27, 1925.

Judgment was rendered for appellees upon this verdict, from which this appeal is perfected.

Appellees' counsel suggest that, if this court ever held attorneys to a strict account for the manner of briefing a case, they would be inclined to object to our considering appellant's brief as a whole, because not in compliance with the new rules of briefing. Appellant's brief does not comply with either the new or old rules of briefing, and as a result the labor of counsel for appellees, as well as this court, has been greatly increased. For instance, appellant set out 190 points or propositions of law and does not specifically brief any particular point or proposition. Practically the whole of the evidence is set out under the designation, "The Testimony," without reference to any particular point or proposition. The argument is generally addressed to the whole case without any particular reference to a point or proposition relied upon. The brief thus prepared consists of a printed book containing 213 pages. Counsel can very materially aid the courts in disposing of their congested dockets by properly and concisely briefing their cases. However, so far as we have been able to ascertain, the Supreme Court has not up to this time required a strict compliance with the new rules of briefing. Counsel for appellant who prepared the brief has filed a written argument, in the nature of a reply brief to appellees' brief, in which he states that matters over which he had no control are responsible in part for the condition of the original brief. In this reply brief some 3 or 4 of the 130 points or propositions relied upon by appellant are briefed and present error requiring a reversal of the case.

[1] Appellant complains that special issue No. 7, supra, did not submit the proper measure of damages. The measure of damages submitted by this issue was the value of plaintiffs' cattle in the condition in which they actually arrived at destination and at the time of their arrival, and what would have been their value at such time and place if they had been carried in the usual and ordinary manner, etc. This charge does not instruct the jury to find either the intrinsic, market, or reasonable value of the cattle at destination. The measure of damages to a shipment of live stock caused by delay is the difference in their market value in the condition in which they arrived at the point of destination, and in which they would have been but for the negligence complained of. Only in instances where there is no market value at point of destination are the courts authorized to find the reasonable or the intrinsic value of the stock shipped. A market value at destination for the class of cattle included in this shipment was shown: The measure of damages, therefore, must be governed by the general rule. Railway v. Nix-

on, 52 Tex. 19; Railway v. Stanley, 89 Tex. 42, 33 S. W. 109; Railway v. Le Gierse, 51 Tex. 189; Railway v. Berchfield, 12 Tex. Civ. App. 145, 33 S. W. 1010; Railway v. Roberts, 60 Tex. Civ. App. 145, 126 S. W. 890; Railway v. Jones, 104 Tex. 92, 134 S. W. 328; San Marcos Oil Co. v. Soyars (Tex. Civ. App.) 265 S. W. 173; Railway v. White, 110 Tex. 585, 222 S. W. 963; Hines v. Edwards (Tex. Civ. App.) 228 S. W. 1117.

[2] Special issue No 7 is erroneous, because it made the test of liability of the railroad company the failure to carry the cattle "in the usual and ordinary time and manner," etc. In the first paragraph of the court's charge the jury are instructed that:

"It is the duty of common carriers handling live stock to exercise ordinary care to transport the same with reasonable diligence and dispatch, and that failure to exercise such care on the part of the carrier or any of them handling plaintiffs' stock would constitute negligence."

The special issue did not follow this correct charge on the law. The test fixing liability of the carrier for damages for delay is that it failed to transport the cattle with reasonable diligence and dispatch. Railway v. Crowder (Tex. Civ. App.) 157 S. W. 281; Railway v. Isenhower, 62 Tex. Civ. App. 223, 131 S. W. 297; Railway Co. v. Bryson & Burns (Tex. Civ. App.) 195 S. W. 1165; Railway Co. v. Hurst & Riley (Tex. Civ. App.) 135 S. W. 599.

The evidence showed that appellees shipped about 111 head of fat, registered Aberdeen-Angus cattle, 10 bulls, some cows, and heifers. Shipment was delayed at Lometa on account of a part of the cars on the same train and in the rear of the cattle cars derailing. No cause was shown for such derailment, except the general assumption that the deteriorated condition of the roadbed and rolling stock, due to the government's use of them during the war, caused it. The shipment reached Temple after being on the cars for a little more than 36 hours, where they were unloaded, fed, and watered. The shipment was reloaded at Temple on the following day, and after several hours delay proceeded to, Bellville, where it was again delayed for several hours on account of hot boxes so delaying the train that it was unable to make connection with local trains running into Houston. The shipment reached Houston, after being on the road from Temple about 30 hours. Appellees were required under the law to have the cattle examined for tuberculosis before leaving the state, and requested appellant carrier to deliver the cattle to them at the Union Stock Yards at Houston for this purpose. These pens did not belong to the carrier. The carrier was compelled to deliver the cattle to the Belt Line in order to have it deliver the shipment to the Union Stock Yards. Some 8 or 9 hours delay was experienced in this transfer before they were

finally unloaded. According to the drover accompanying the shipment, the cattle were in a very bad condition when they reached the Union Stock Yards, because of long delays and confinement in the cars for such long period of time without having rest, feed, or water, and, according to the witnesses for appellees, they still showed at the time of arrival at destination some bad effects of these long delays and confinement in cars. Appellees kept the cattle 3 days in the Union Stock Yards before the shipment proceeded, being the time required to make the tuberculosis test. The pens were very muddy during all this time, and the cattle became splashed with mud. The shipment then proceeded to Atlanta, Ga.; thence to Columbia, S. C., and appellees testified as to delays at Montgomery, Ala., and to a slow bad run from Atlanta to Columbia. Appellees testified that the difference in their market value in the condition in which they arrived and in the condition in which they would have arrived if the carrier had transported them in the usual and ordinary time and manner was from $50 to $75 per head.

[3] In view of this evidence of confinement in muddy pens for three days, and in connection with special issue No. 7, supra, appellant requested, in writing, that the jury be instructed not to take into consideration damages for any injured condition of the cattle due to appellees' keeping them confined for three days in the muddy pens of the Union Stock Yards at Houston, for the purpose of testing them for tuberculosis. This instruction should have been given. As we construe special issue No. 7, without such instruction, the jury might take into consideration this delay as not being "in the usual and ordinary time and manner" of transportation. Also the carrier is not liable for any injury resulting by reason of the bad appearance of the cattle due to the fault of the shipper keeping them for three days in muddy pens of his own selection. The evidence is undisputed that such confinement in muddy pens for that period of time necessarily causes injury to cattle.

In this connection appellees insist on the rule which provides that, where a carrier negligently delays cattle in transit, which negligence caused or contributed to cause damages thereto, and where the jury finds, on competent evidence that the cattle had been negligently delayed as alleged and showed to have suffered injury at destination, proximately caused thereby, that the shipper is entitled to a judgment for the full amount of the damage suffered by the cattle while in route to market, without respect to any other cause that may have contributed thereto, applies here. As a general rule, it may be said that negligence to render a carrier liable need not be the sole cause of an injury. It is only necessary that its negligence concurring with one or more efficient causes, other than plaintiff's fault, is the proximate cause of the injury. 29 Cyc. p. 496. And in this connection appellees cite Railway v. Dawson, 34 Tex. Civ. App. 240, 78 S. W. 235; Railway v. Culwell (Tex. Civ. App.) 216 S. W. 459, and many other cases. But the rule announced in those cases has no bearing upon the issue here, for the reason that the railroad company is not responsible for any depreciation in the value of the shipper's cattle due to bad appearance by having been kept in muddy pens of the shipper's own choosing for three days for the purpose of making the tuberculosis test; and the jury should have been instructed as requested by appellant, in connection with their answer to issue No. 7, that they would not take into consideration any such injury to said cattle.

[4, 5] It is not the law, as contended by appellees, that, if there is delay in the shipment of cattle causing some injury thereto at destination, the carrier is responsible for the full damages, even though some of the damages were the result of the independent acts of the shipper. Such is not the holding of the cases cited by appellees. It is well settled in this state that, if a shipper confines cattle in pens causing shrinkage, even though the carrier may itself by negligent delay occasion shrinkage also, you cannot assess against the carrier the shrinkage caused by the independent acts of the shipper. The following cases sustain our conclusion on this question: Hartford Fire Ins. Co. v. Ry. Co. (Tex. Com. App.) 239 S. W. 919; Ry. Co. v. Fagan, 72 Tex. 127, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776; Ry. Co. v. Pavillard (Tex. Civ. App.) 187 S. W. 1000; Ry. Co. v. Edins, 36 Tex. Civ. App. 639, 83 S. W. 253; Ry. Co. v. Earnest (Tex. Civ. App.) 77 S. W. 29. These cases make it the duty of the trial court, where the facts in the record call for the instruction requested in this case, to give it. Each party to a suit is entitled to have the law applied to the matters of interest to each raised by the pleadings and evidence. Fox v. Hotel Co., 111 Tex. 461, 240 S. W. 517. In Ry. Co. v. Earnest, supra, this court held that, where "the facts in the record" call for the instruction requested by appellant in this case, it is error not to give it.

We are also of the opinion that the cause must be reversed because of the improper argument of counsel closing the case of appellee. Without stating the argument of counsel fully, we find that he discussed many matters outside of the record which were prejudicial and should not have been permitted by the court. For instance, he told the jury that the Hills had a wonderful ranch, and had done much for the country by helping bring about the passing of long-horned cattle, surplanted by thoroughbred Aberdeen-Angus; that the Hills had been very successful during all of these years in which they were trying to breed up a better grade of cattle; and that:

"There isn't a man who knows Will Hill, but knows he was prudent and economical, and knows he is well worthy of success. He was careful and attentive to his business, yet, after all these years expended in raising these cattle, we find him working for wages down in south Texas, at a town in Hidalgo county, the county seat of Hidalgo county. He has not prospered any too well as a result of all these years and effort in raising and improving these cattle."

There is no testimony in the record, so far as we can find, concerning or relating to any of these matters. Counsel also appealed to the jury in connection with the claim of the Hills against the railroad company or the government operating the railroad company for damages; that he was not asking any more of the government than the railroads had or would, and stated:

"I think if you gentlemen could have any idea as to the comparison between them, you would readily come to the conclusion that Mr. Hill has been as fair to this generous government as the railroads of this country are, particularly also, if you men have ridden over the railroads of this country and seen the pine trestle work replaced with concrete that will be there 100 years from now."

Counsel also told the jury that he knew one of the Hills had done as much for the government as any man during the war. There is no testimony in the record concerning these matters. Counsel for appellant objected to this line or argument one time, and the attorney making the argument replied, "Sam Jones said years ago that it is the hit dog that yelps."

[6] As we understand the rule, counsel is not required to object to improper argument. The rules governing district courts in the trial of cases provide that counsel shall be required to confine the argument strictly to the evidence and to the arguments of opposing counsel, and the court will not be required to wait for objection to be made where the rules as to argument are violated. Rule 41, district and county courts.

In the case of Home Life & Accident Ins. Co. v. Jordan (Tex. Civ. App.) 231 S. W. 802, the court said:

"By these rules the 'duty devolves affirmatively, first, upon counsel to confine his argument strictly to the evidence and to the argument of opposing counsel; second, upon the court, on its own motion, to confine counsel to this line of argument.' If both the counsel who is making the argument and the court shall fail in the discharge of their duty, the rules give to opposing counsel the privilege, but do not make it his duty, to then present his point of objection. This discretion given to counsel, as to whether he will make the objection at the time, was doubtless based upon the well-known embarrassment, and often prejudice, which generally attend the interruption of argument of counsel by another. Willis & Bro. v. McNeill,

57 Tex. 465." City of Austin v. Gress (Tex. Civ. App.) 156 S. W. 535; Ry. Co. v. Rehm, 36 Tex. Civ. App. 553, 82 S. W. 526; Vogt v. Guidry (Tex. Civ. App.) 229 S. W. 658.

[7] We think that the argument that one of the appellees is working for wages, and had not prospered any too well after all these years of effort in trying to improve the breed of cattle, necessarily informed the jury that he was poor, which is a matter that cannot be proven in the trial of a case of this character, and that the jury ought to reward them for their services to the country for improving the breed of cattle. North Tex. Traction Co. v. Dave Jenkins (Tex. Civ. App.) 266 S. W. 175 and cases there cited.

In view of another trial, we also suggest that the trial court define "ordinary care," as requested by appellant. We do not sustain any of the other propositions relied upon by appellant to reverse the case.

For the reasons stated in the opinion, the cause is reversed and remanded.

Reversed and remanded.