NICHOLSON et ux. v. NICHOLSON.
(No. 612.)

Court of Civil Appeals of Texas. Eastland.
Nov. 1, 1929.

Rehearing Denied Dec. 13, 1929.

Scott & Gilbert, of Cisco, and Walter L. Morris, of Fort Worth, for appellants.

Blanton, Blanton & Blanton, of Abilene, for appellee.

LESLIE, J. This is a case in which Mrs. Marguerite Nicholson sued I. Nicholson and Mrs. Sue M. .Nicholson to recover damages for an alleged alienation of the affections of her husband, Bruce Nicholson, the son of the defendants. A trial before the court and jury resulted in a verdict for $10,000 in favor of plaintiff. Defendants have appealed.

The correctness of the judgment below is challenged by fourteen propositions of law based upon eighteen assignments of error. These propositions have been considered, and, excepting the third and fourteenth, they are overruled without comment, since, in our judgment, they are without merit and present questions of merely an elementary nature, so frequently discussed in the decisions that it would serve no useful purpose to repeat here what has so often been said.

Proposition 3 complains of the court's refusal to give the defendants' special charge No. 1. The charge will not be set out, since it contains a rather lengthy discussion of the defendants' theory of the law applicable to the case, and also embodies therein the following issue: "Did the defendants I. Nicholson and Mrs. Sue Nicholson, with malicious intent towards the plaintiff and without just cause or excuse, alienate the affections of their son Bruce Nicholson from the plaintiff; or cause a divorce?"

That portion of the special charge which preceded said issue amounted to a general charge on the law of the case, and it is uniformly held that it is error for the trial court to give such charge when a cause is submitted on special issues. As authorized by statute (article 2189, Rev. St. 1925) "explanations and definitions of legal terms" in a charge should be given by the court in connection with special issues upon which a case is submitted, but all other charges, general or special, with reference to such issues, should be rejected. West Lbr. Co. v. Keen (Tex. Com. App.) 237 S. W. 236; Crawford v. El Paso Sash & Door Co. (Tex. Com. App.) 288 S. W. 169; T. & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; Humble Oil & Rfg. Co. v. McLean (Tex. Com. App.) 280 S. W. 557; McFaddin v. Hebert (Tex. Com. App.) 15 S.W.(2d) 213; T. & N. O. Ry. Co. v. Owens (Tex. Civ. App.) 299 S. W. 933.

Further, the requested issue is not in correct form; it submits an alternative, and combines an issue with a mere evidentiary matter, the last alternative being nothing more. Had the issue been submitted and answered in the affirmative or negative, one could not be sure what the jury had in mind in so answering it. The defendants could have alienated the affections of the son, rendering themselves liable in damages, and in no way have been responsible for his affirmative acts in procuring the divorce. The reverse could have been true, since the defendants could have been guiltless of the charge of alienating the affections of their son and at the same time have assisted him in procuring a divorce; it being the law that to render parents liable for such interference in the marital relations of their children, malice upon their part must be shown to exist. There is no liability on their part when acting in good faith and with a bona fide endeavor to serve the best interest of their child. Fronk v. Fronk, 159 Mo. App. 543, 141 S. W. 692; Nolin v. Pearson, 191 Mass. 283, 77 N. E. 890, 4 L. R. A. (N. S.) 643, 114 Am. St. Rep. 605, 6 Ann. Cas. 658, and notes thereunder, which are an exhaustive brief of every phase of this character of case.

As the case was presented, the issue, if any, of the parents' good faith (13 R. C. L., p. 1471, § 522), should have been presented to the jury in the form of a special issue, not as a charge, general or special.

Proposition 3 is overruled.

The fourteenth proposition presents a more serious question, and has challenged the most thoughtful consideration upon the part of this court. The alleged error is predicated upon certain features of the closing argument of counsel for plaintiff. No objection was made to the argument in the course of its delivery, and the points were advanced for the first time in the motion for new trial, and there the argument as a whole was presented and complained of as being in violation of the rules governing argument of counsel and prejudicial to the defendants' rights. Although no objection was made to the argument at the time of its delivery, we have concluded that it is our imperative duty, under the authorities hereinafter cited, to consider this proposition, since it seeks to present for revision an error alleged to arise from an argument injecting into the case matters of an inflammatory nature and calculated to prejudice the rights of the losing party before the jury. Such matters are available to be assigned as error in a motion for a new trial the same as though objections had been made thereto in the trial. Hewitt v. Buchanan (Tex. Civ. App.) 4 S.W.(2d) 169–178 (25–27); Davis v. Hill (Tex. Civ. App.) 271 S. W. 282; Home Life & Accident Co. v. Jordon (Tex. Civ. App.) 231 S. W. 802, 806.

In the last authority it is said: "The rules promulgated for the government of the district court declare that counsel shall be required to confine the argument strictly to the evidence and to the arguments of opposing counsel (Rule 39 [142 S. W. XIII]), and the court will not be required to wait for objections to be made where the rules as to arguments are violated (Rule 41 [142 S. W. XIV]). By these rules the 'duty devolves affirmatively, first, upon counsel to confine his argument strictly to the evidence and to the argument of opposing counsel; second upon the court, on its own motion, to confine counsel to this line of argument.' If both the counsel who is making the argument and the court shall fail in the discharge of their duty, the rules give to opposing counsel the privilege, but do not make it his duty, to then present his point of objection. This discretion given to counsel, as to whether he will make the objection at the time, was doubtless based upon the well-known embarrassment, and often prejudice, which generally attend the interruption of argument of counsel by another. Willis & Bro. v. McNeill, 57 Tex. 465. Counsel should never endeavor to obtain a verdict by argument based upon anything other than the facts in the case and the conclusions legitimately deducible from the law applicable to them, and any other practice should be promptly repressed. 'Every litigant, whether he be morally good or bad, or rich or poor, is entitled, in a court of justice, to have his rights passed upon and his evidence weighed by a nonprejudiced tribunal.' "

The foregoing excerpt indicates the letter and the spirit of the rule alleged to have been violated in the instant case.

We do not mean to hold (as it is unnecessary to do so in this case), that all errors based on prejudicial argument may be raised for the first time in the motion for a new trial, though the rules indicate that the duty devolves affirmatively, first, upon the counsel to confine his argument strictly to the evidence and to the argument of opposing counsel; second, upon the court, on its own motion, to confine counsel to this line of argument. However, when actual damages alone are sought, and the record discloses that throughout the argument improper and unjustifiable reasons have been advanced and emphasized to govern the jury in estimating the damages, and the argument in general amounts to an appeal for a verdict carrying punishment rather than legal compensation for a wrong, and the right of recovery and the amount thereof present rather close questions on the record as a whole, then we believe the questions arising from improper conduct may be safely raised for the first time in the motion for a new trial and become available for assignments of error.

Before passing to a consideration of the alleged objectionable argument, it is well

to call attention to another well-established rule laid down by the Supreme Court to govern this court in passing upon and determining whether or not improper argument should be held as such material and prejudicial nature as to work a reversal of the judgment of the trial court and entitle a complaining party to a new trial. That rule is plainly set forth in an opinion by the Commission of Appeals in Bell v. Blackwell, 283 S. W. 765, and reaffirmed in Hubb Diggs Company v. Bell, 293 S. W. 808, 810; Emberlin v. W. F. R. & Ft. W. Ry. Co., 284 S. W. 539, and other authorities unnecessary to mention.

Briefly and in substance, the rule is that, where improper argument has been indulged in by an attorney and the question properly presented, the complaining party is entitled to a reversal of an adverse judgment, if, under all the circumstances, there is any reasonable doubt of the harmful effect of such argument, and that, whether there is such reasonable doubt, is a question of law and not of fact.

We will now make an application of these rules to the issue presented. This involves an examination of the alleged objectionable argument as a whole, as well as the specific excerpts complained of as unwarranted. The portions thereof particularly complained of as prejudicial relate to the character of verdict the attorney sought to obtain at the hands of the jury. Practically in the beginning of his argument this language was used: "Then what's the other issue? How much are you going to assess? Judge Morris is awfully afraid that you will give her a judgment for $25,000.00. It is not a question of money in this case. Why, if you were to give a judgment for $25,000.00, which I think the evidence amply justifies, I doubt whether this little girl over here would ever collect a dollar of it, because a man who is as smooth as the evidence in this case shows Irvin Nicholson to be would be smooth enough to put his property beyond the reach of the process that this little girl would have access to. I am not going to ask you to give her a big judgment for the purpose of her collecting the money. I am going to ask you to give her a big judgment when you write the verdict that will make people sit up and take notice that in Shackelford County we expect something of citizens, men and women, with regard to their duty to their own children and society."

Soon again in the argument, covering a period of 35 to 50 minutes, the character of verdict was again discussed in this language: "I don't know what kind of a verdict you are going to write in this case. I know this, if I was a juror and you presented these facts I would write such a verdict that would say to these folks, whether you could collect on it or not, I would write a verdict in such an amount that it would make interfering men and women sit up and take notice when they interfere with the affections of married people."

Also, thereafter as follows: "How much are you going to give the plaintiff in this case? Are you going out here and give her a judgment for $5,000.00? A judgment for five cents would be worth just as much to her as a judgment for $25,000.00 because I don't believe she will ever collect anything, but I will tell you what I want you to do for me, gentlemen, believing like I do in this county, you are going out here and say that, when this father and mother, without any just cause or excuse, and when you find that they didn't have just cause or excuse for separating them, you have met the court's requirement, you have met the requirements of the law, that when they come here, interfere and cause a divorce against this poor girl, charging her with lies that are as false as Hell, that they have deprived this girl of what?"

Then proceeded a statement by counsel of some of the matters the plaintiff had been deprived of, and, after an interruption by the court, the attorney's time having expired and a short time additional having been granted for conclusion, the counsel brought his argument to a close with an additional appeal bearing directly upon the amount of the verdict, in this language: "We are going to say that to a woman in Shackelford County it is not worth $5,000.00, $10,000.00, $15,000.00, but it is worth $20,000.00 or $25,-000.00. Don't you put a low estimate on the duties of the husband to the wife, but put it up high that the duty the husband owes to his wife in Shackelford County is worth at least $25,000.00. We will be satisfied with whatever you do."

From this it will be seen that frequently throughout the argument counsel for plaintiff adverted to the verdict and the considerations which should enter into the fixing of the amount thereof.

■■ Granting that the defendants alienated the affections of their son for his wife, as alleged, it must be recognized that the object of this suit was for the sole purpose of recovering such damages or compensation as the law allows one thus wronged. It is well settled that in such a suit the plaintiff is entitled to recover nothing but the pecuniary value of the benefits flowing from such marriage relations, and of which benefits the plaintiff has been deprived by the defendants' tortuous conduct. There is no exact method or rule by which to determine the quantum of such damages, save and except the judgment of unbiased jurors whose minds should be free from influence of prejudicial matters improperly injected into the solemn proceeding of a trial court. The able attorney, in the opening part of his argument, impressed the jury that "it is not a question of money in this case," and then seriously stated

518

that, if tl.; jury should award a judgment of $25,000, the plaintiff would probably never collect a dollar of it, because a man as smooth as the defendant Irvin Nicholson "would be smooth enough to put his property beyond the reach of process." There is no evidence in the record supporting such a damaging surmise, and the bill approved by the court certifies that neither this nor the other portions of the argument were "called for by statements made by defendants' attorneys."

Notwithstanding such suits are authorized by law for no other purpose than the collection of the monetary value of having been wrongfully deprived of a legal right by another, and although this suit was for actual damages only, and no effort was made to recover punitive damages, the argument, as may be seen, continued to emphasize the importance of a recovery, grounding it upon a reason not authorized by law, as evidenced by the latter part of the first quotation, in which the appeal is made in this language: "I am not going to ask you to give her a big judgment for the purpose of her collecting the money. I am going to ask you to give her a big judgment when you write the verdict that will make people sit up and take notice that in Shackelford County we expect something of citizens, men and women, with regard to their duty to their own children and society."

There is no suggestion in the record that the defendants would conceal their property from the processes of the court, nor that they had any to conceal. More than once the jury were given to understand that, in so far as there was a possibility of collecting the judgment, the judgment itself was a futile thing. Among others of a like nature, the argument contained this solemn declaration: "A judgment for five cents would be worth just as much to her as a judgment for $25,000.00, because I don't believe she will ever collect anything."

In view of such argument and the alleged futility of any judgment as a means of collecting compensation for a wrong, the jury might plausibly be inclined to inflict an unusually large judgment on the defendants as an example to other people to make them "sit up and take notice" of what was generally expected of citizens in Shackelford county, and the argument improperly minimized the seriousness attaching to the amount of the judgment, since the jury could infer that under no circumstances would the plaintiff collect anything. If the defendants were guilty of the charge made in the plaintiff's petition, in law they ought to pay the money damages resulting from their conduct, but there is nothing in this record under the law to warrant the jury's inflicting upon the defendants any character of judgment merely as an object lesson to other people, however reprehensible meddling with the marriage relations of others may be. That the possibilities

of collecting a judgment are slight or nil in the judgment of counsel is no reason or justification why the amount of the verdict should be fixed, evidently large, merely to make it meet the requirements of an impressive object lesson to others. No verdict based upon a consideration of punishment as a public object lesson would be authorized under the law, and no such character of appeal should be made therefor.

In the second quotation the jury's attention is forcefully directed to what the attorney would do if he were on the jury, and he assures them that he "would write a verdict in such an amount that it would make interfering men and women sit up and take notice when they interfered with the affections of married people." Thus the effect of the judgment upon third persons and the public generally is forcefully brought to the attention of the jury. The benefits of such a judgment as a matter of reform and as a deterrent from mischievous conduct were emphasized, whereas the sole purpose of the suit was for actual money compensation in consequence of a wrong suffered.

Other portions of the argument will not be separately discussed, but throughout the argument, in the respect under consideration, it bristles with forceful and vigorous statements emphasizing an incorrect theory of estimating the damages in the case, and, by reason of the contentions made, we have been prompted to a close review of the authorities of this state to determine whether or not the nature of this argument should work a reversal of the judgment below.. Some of the cases bearing upon the question will be reviewed.

Our Supreme Court, in Dillingham et al. v. Scales, 78 Tex. 205, 14 S. W. 566, had before it for consideration that question alone. It was a suit in which the plaintiff sought to recover pecuniary damages for the death of a son, alleged to have been negligently caused by his employer, a railway corporation. After drawing some severe strictures on the corporation, counsel for plaintiff, in his argument, remarked: "There is the corporation. What does he care for this case? What does he care for the lives of these boys? There is only one thing to make him care and that is a jury of twelve men of this country."

In commenting upon the effect of this argument, our Supreme Court used this language: "It is well settled that the plaintiffs were not entitled to recover anything but the pecuniary value to them of the life of their son. On account of there being no exact method of estimating the amount of such damage provided by the law, we do not feel authorized to set aside every verdict that is for a greater amount than we would have given as an original question, or when we cannot account for it from the evidence, when the question has been properly submitted to the jury, but in all such cases there must be no ground to

believe that the verdict has been influenced by any improper cause. It must appear that the cause has been fairly submitted to the jury upon the law and evidence, and there must be no ground for charging that the verdict has been influenced by extraneous considerations or by passion, partiality, or prejudice. The verdict is larger than we can account for upon any view of the evidence. The remarks of counsel excepted to were not justified or called for by anything legitimately belonging to the case. We cannot say they did not improperly prejudice the jury. We cannot say that they exercised no influence on the jury. If they exercised any, it was an improper one. The fact that we have no means, and that the jury had none, of arriving at the exact amount of damage in such cases, emphasizes the importance of guarding the minds of the jury from all misleading and improper influences and appeals."

The excerpt from the above opinion sets forth a process of reasoning and an expression of thought especially applicable to the facts of this case, and we adopt and apply the same in this opinion.

In Western Union Telegraph Company v. Smith, 52 Tex. Civ. App. 107, 113 S. W. 766, in disposing of an assignment of error challenging the fairness of the argument of counsel for the plaintiff wherein he stated to the jury: "When these telegraph companies fail to deliver messages in time, you ought to punish them with your verdict. That is the only way to make them do right—to punish them. These damages sued for are not to pay plaintiff so much for his suffering, but to punish the telegraph company and make it more careful"—this language was used: "Unless it can be said that the jury understood this argument as merely 'buncombe,' and an effort to tickle the ear of the audience, it must be assumed that it was intended to accomplish some purpose in influencing the jury. It was a direct appeal to the jury to return a verdict for damages as an infliction of punishment upon the telegraph company for failure to perform a duty that it owed to the plaintiff. Of course, this is not the law. In a case of this character, where the recovery is for actual damages, there should be allowed no appeal to the jury that the wrongdoer should be punished by awarding damages to the plaintiff. The question is merely one of compensation, and this the attorney who indulged in the argument must be presumed to have known. What effect the argument had upon the jury we have no means of ascertaining; but it is clear that it was calculated to have the effect which was evidently intended by the attorney who made it. That effect, of course, was to influence the jury to punish the telegraph company by a verdict for damages in favor of the plaintiff. The language is susceptible of no other construction."

In disposing of an assignment addressed to improper argument, the court, in the case of G., C. & S. F. Ry. Co. v. Dooley, 62 Tex. Civ. App. 345, 131 S. W. 831, 833, employed this language: "The first bill taken, it seems to us, shows that counsel for appellee sought to obtain probably a larger verdict than he thought the facts would warrant as a punishment to appellant for bringing persons whom he called liars to sustain their contention. It is not the object of the law to give damages by way of punishment for actual injury suffered by reason of negligence, but only as compensation therefor. This being true, it is improper, we think, for counsel to tell the jury or to intimate, as was seemingly done here that appellant should be punished by assessing damages for bringing false witnesses to testify in their behalf, if such in fact was the case."

Texas Central Ry. Co. v. Pledgor, 36 Tex. Civ. App. 248, 81 S. W. 755, is another case in which the attorney for the plaintiff appealed for the full amount of recovery "in the name of humanity, in the name of sympathy." In speaking of the effect of the argument, it is said by the court: "The argument referred to was improper, and the objections to it should have been sustained, and proper steps taken by the judge to prevent the jury from being influenced thereby. It was the duty of the jury to decide the case solely by the law and the testimony; by the first as contained in the charge of the court, and by the latter as placed before them by the witnesses; and they had no more right to decide the case upon considerations of humanity or sympathy than by casting lots, or upon considerations of prejudice or hostility to the defendant."

As relating to the effect of improper argument upon the verdict of the jury, we desire to call attention to an additional interesting authority. It is the opinion in the case of Postal Telegraph Cable Company of Texas v. Smith, 135 S. W. 1146, 1147. There the Court of Civil Appeals omitted to pass upon the assignment presenting the question of misconduct in the attorney's argument. The judgment of the trial court was reversed and the cause reached the Supreme Court upon a writ of error. That court, after passing upon the various assignments, returned the record to the Court of Civil Appeals, with directions that it proceed to pass upon the assignment raising the question of improper argument. In compliance with such direction, the Fifth Court of Civil Appeals, through Chief Justice Rainey, disposed of the question thus: "The language complained of is: 'Counsel for the defendant said that you should not give plaintiff any damages as a punishment of the defendant company, but I say that the only way to hold these companies in line and make them give good service is to punish them by putting a money fine on them; that wakes them up; that touches them.' This language

was highly improper and calculated to arouse the passions and prejudices of the jury, and cause them to render a larger verdict than would otherwise have been rendered. The appellee was only entitled to just compensation for the mental anguish suffered by Mrs. Smith. It was not the province of the jury in this case to inflict punishment upon the telegraph company for its negligence in failing to promptly deliver the message in order to impress it with the importance of diligence in delivering telegrams. Punishment was not a matter for their consideration. Just compensation to the appellee for the damages she had sustained was the question for the jury's determination. What effect the language may have had upon the jury we cannot tell; but from the amount of the verdict we conclude that the remarks of counsel were not without effect."

Having thus pronounced the law upon the facts of that case, the record was recertified to the Supreme Court, and that body, through Justice Ramsay, approved the conclusions reached. See that opinion, 104 Tex. 171, 133 S. W. 1041, 135 S. W. 1147.

We think the authorities uniformly condemn the character of argument here complained of, and it is unnecessary to cite other authorities to the same effect, though they are numerous. Throughout the argument, the counsel, by recurring to the matter of recovery, emphasized the theory of estimating damages entirely inconsistent with the theory and the purpose of the suit or the law authorizing it. In passing upon this question, this court has naturally considered the same with reference to all the facts of the case, as well as the argument as a whole. We are not unmindful of the qualifications attached by the trial judge to the bill of exceptions in this instance, but those qualifications, proper in themselves, do not help the situation nor remove the vice complained of. The argument could have been made for but one purpose and one alone, and that to influence the jury, and, coming from the lips of an able lawyer and a distinguished citizen, it very probably did influence them, and, as said in Western Union Telegraph Company v. Burgess (Tex. Civ. App.) 60 S. W. 1023, 1025: "This is no reflection upon the integrity or intelligence of the jury, for the human mind is often unconsciously controlled by influences which it has striven to combat, and which it believes it has overcome. In recognition of this fact, the law throws around a jury every safeguard to keep their minds free from every impression except such as is produced by the legal evidence admitted in the case, and a disregard of these safeguards in the trial of a case makes it the duty of an appellate court to set aside the verdict of the jury in all cases in which it is probable that such irregularity has been injurious to the party complaining of it."

Many additional authorities to the same effect are here cited in that opinion.

Bearing in mind that Bell v. Blackwell, supra, and the other authorities cited in connection therewith, lay down the rule that "improper argument is calculated to prejudice where from the record it appears reasonably doubtful whether harm has resulted therefrom," and that "the real rule is that, where error is of such a nature under all the circumstances as probably to have prejudiced the complainant, reversal should follow as matter of law," it follows that an application of such rules to the facts of this case leads inevitably to a reversal of the judgment of the trial court.

For the reasons assigned, the judgment is reversed, and the cause remanded.

### On Rehearing.

At a former day of this term, the judgment of the trial court in this cause was reversed because of prejudicial argument indulged in by the attorney for the appellee. In deference to our holding, and with the view of removing from the judgment the prejudicial effect of said argument, the appellee has filed a substantial remittitur of a portion of the judgment. The appellant refuses to accept the remittitur, and this court is therefore unable to give any effect to the same, for the reason that there is no rule of law by which we are able to determine the extent to which said argument affected the judgment. The judgment is an entirety, and it is peculiarly within the province of the jury to estimate and determine the amount of damages in such a case, and, in the absence of any contention that the judgment is excessive, we would not be inclined to disturb the judgment of a jury based upon a record free from a prejudicial error in the respect under consideration.

The motion for rehearing will be overruled.