GULF, COLORADO & SANTA FE RAILWAY COMPANY v. P. E. DOOLEY.

Decided October 19, 1910.

**1.—Argument of Counsel.**

Argument of counsel considered and held improper and its permission by the court reversible error, it being an inflammatory appeal to passion, and invoking a punishment of defendant with damages because of false attacks on plaintiff's evidence.

**2.—Misconduct of Counsel.**

Conduct of counsel for plaintiff in interrupting comments of opposing counsel on his failure to introduce testimony by offers to now produce it and intimations that it would be favorable to plaintiff if produced, held improper and ground for reversal.

**3.—Evidence—Cross-examination—Medical Expert—Use of Books.**

On cross-examination of a medical expert counsel should be permitted to use extracts from medical books, not for the purpose of making their statements evidence, but to test the qualifications of the witness and weight to be given to his testimony.

**4.—Evidence—Custom.**

Plaintiff having testified that he had been neglected by the physicians in a railroad hospital several years before, and such physicians having no recollection of his case or treatment, it was permissible for defendant to show that their custom was to give prompt, careful and proper attention to patients.

**5.—Evidence—Force of Collision—Res Gestae.**

Plaintiff, a brakeman, having testified that by a collision of trains he was violently thrown from the coach platform some distance inside the car, it was

permissible as part of the res gestae for defendant to show the effect of the collision on passengers in such coach and that no one else was injured there.

### 6.—Evidence—Expert—Fees.

Plaintiff not being entitled to recover as damages the fees paid to experts to obtain their evidence, the opinion of such expert as to the reasonableness of the fee which he charged plaintiff was immaterial, and should have been excluded on objection.

Appeal from the District Court of Tom Green County. Tried below before Hon. J. W. Timmins.

*Terry, Cavin & Mills, Wright & Wynn, Joseph Spence, Jr.,* and *Chas. K. Lee,* for appellant.—The use of such language as is complained of has been repeatedly condemned by our courts. Willis v. McNeill, 57 Texas, 473; F. W. & D. C. v. Hays, 51 Texas Civ. App., 114; Col. Canal Co. v. McFarland, 50 Texas Civ. App., 92; Railway Co. v. Cooper, 70 Texas, 440; Railway Co. v. Jarrell, 60 Texas, 267; Railway Co. v. Jones, 73 Texas, 236; M. K. & T. v. Cherry, 47 Texas Civ. App., 232; G. H. & S. A. v. Washington, 42 Texas Civ. App., 380; T. & P. v. Beezeley, 46 Texas Civ. App., 108; Railway Co. v. Musick, 33 Texas Civ. App., 177; W. U. Tel. Co. v. Smith, 113 S. W., 766; 52 Texas Civ. App., 107; C. R. I. & T. v. Jones, 81 S. W., 60.

An attempt to appeal to prejudice by arraying the rich against the poor—improper. C. R. I. & T. v. Langston, 19 Texas Civ. App., 568, 92 Texas, 709; Railway Co. v. Jarrell, 60 Texas, 267; Dillingham v. Scales, 78 Texas, 205.

Improper for counsel to testify or argue facts not in evidence. M. K. & T. v. Walden, 46 S. W., 87; Fordyce v. Withers, 1 Texas Civ. App., 540; M. K. & T. v. Woods, 25 S. W., 742; T. & S. Ry. v. O'Brien, 18 Texas Civ. App., 690; Whittaker v. Thayer, 110 S. W., 787; Rotan v. Maegden, 59 S. W., 585, 24 Texas Civ. App., 558; Railway Co. v. Musick, 33 Texas Civ. App., 177; Railway Co. v. Jarrell, 60 Texas, 267; C. R. I. & T. v. Jones, 81 S. W., 60; Ft. W. & D. C. v. Jones, 81 S. W., 60; Ft. W. & D. C. v. Burton, 25 Texas Civ. App., 63.

A medical expert may be cross-examined generally as to the views of standard medical works, for the purpose of testing his knowledge and capacity. G. C. & S. F. v. Farmer, 102 Texas, 235; Egan v. Dry Dock R. R. Co., 12 App. Div. (N. Y.), 556; Henderson v. State, 19 Neb., 262; Hess v. Loury, 122 Ind., 225; Fisher v. So. Pac. Ry. Co., 89 Cal., 399.

*Odell & Johnson, Hill & Lee,* and *O. T. Plummer,* for appellee.—The proof of plaintiff's injury was sufficient. Beaumont Traction Co. v. Happ, 57 Texas Civ. App., 427; M. K. & T. Ry. Co. v. Hendricks, 49 Texas Civ. App., 314; I. & G. N. Ry. Co. v. Williams, 55 Texas Civ. App., 176; Ziekme v. Miller, 117 S. W., 1010; M. K. & T. Ry. Co. v. Jones, 117 S. W., 1010.

Defendant was not prejudiced by the argument. G. H. & S. A. Ry. Co. v. Smith, 93 S. W., 187; G. H. & S. A. Ry. v. Smith, 100 Texas, 267.

It is the rule in this State not to reverse the judgment of a court, even on account of improper language by counsel unless the preponderance of the evidence seems to be against the verdict or the damages too excessive. G. H. & S. A. Ry. Co. v. Smith, 93 S. W., 187; G. H. & S. A. Ry. Co. v. Smith, 100 Texas, 267; Railway Co. v. Irvin, 64 Texas, 529; Willis v. Lowrey, 66 Texas, 540; Blum v. Simpson, 66 Texas, 84; Sinclair v. Stanley, 69 Texas, 718; Railway Co. v. Jones, 73 Texas, 232; McClain v. Paschal, 74 Texas, 27; Welborne v. Downing, 73 Texas, 530; Belknap v. State, 56 S. W., 252; M. K. & T. Ry. Co. v. White, 80 Texas, 209; Galveston, etc., Ry. Co. v. Crosskill, 6 Texas Civ. App., 160; Lewis v. Alexander, 31 S. W., 417; Mullen v. G. H. & S. A. Ry. Co., 92 S. W., 1000; Prather v. McClelland, 28 S. W., 94.

RICE, ASSOCIATE JUSTICE.—This suit was brought by appellee to recover damages for personal injuries alleged to have been sustained by him in a rear-end collision between the passenger train upon which he was working at the time as a brakeman, and one of appellant's freight trains, at Belton Junction on January 20, 1905, and for which he recovered judgment in the sum of $6000.

It is conceded on the part of appellant that the company was at fault for the collision, and the only question urged by it, both here and in the court below, to defeat a recovery was that appellee was not in fact injured thereby.

Without undertaking to give a resume of the evidence, suffice it to say that appellee was the only witness upon whose statements the verdict could be predicated as to the fact of injury at the time of the collision, and at the trial the plaintiff rested upon the introduction of his evidence. In rebuttal, however, he offered testimony of his own physician who examined him shortly after the accident, and whose testimony confirmed and corroborated that of plaintiff relative to the character, extent and permanent effect of the injuries complained of. But, on the other hand, appellant, by several eye-witnesses at the time of the occurrence, showed that plaintiff, while sustaining a fall at the time of the collision, was not in fact hurt; and by the testimony of four expert physicians, some of whom examined him shortly after the accident, showed that he was not seriously injured, and that the injury complained of was not permanent. Appellant likewise offered testimony to the effect that plaintiff, between the time of the accident and that of the trial, had been engaged in the performance of work which it contended he would have been unable to perform had he been injured as claimed; and there were other witnesses for appellant who testified to facts, acts and circumstances tending to show that he was feigning his injuries. So that the issue of whether plaintiff was injured at all or not, was clearly made and closely contested between the parties.

Among the reasons assigned for a reversal of this case is that one of the counsel for plaintiff during his closing argument appealed to the passions and prejudices of the jury, as well as made statements not sup-

ported by the record, which it is claimed wrung from them a verdict for plaintiff to which he was not in fact entitled under the evidence, but is contrary to the great preponderance thereof, and reflects, instead of the law and the evidence, the passions and prejudices of the jury aroused by his impassioned and unwarranted appeal. There were twenty-one bills of exception reserved by appellant during the closing argument. We will not, however, undertake to determine whether all of them are well taken, but will confine our discussion to such of them as we think are in violation of the law and transgress the rules so often laid down by our courts in this respect.

Among other things counsel in his closing address said: "The law says he (meaning plaintiff) is entitled to recover in this case. Through all the years of the future he is entitled to recover. Don't send him away from here disgraced, a malingerer among his fellow citizens. I would stay in the jury room until I rot and the ants carry me out of the window before I would do it. You are not going to do it. The gentlemen of the Santa Fe Railroad don't compromise his rights. He is entitled here to damages. Twelve or fifteen thousand dollars will 'not compensate him for his injuries and all the years he may live. *It will not compensate him for all the injuries he has suffered in this case by liars who have come here to tell how he acted when he was not present here, but somewhere else. We deserve damages for that."*

He further said: "Gentlemen, is it necessary to destroy the reputation, the character and the standing of a citizen of Tom Green County by bringing men here to swear to facts that never occurred? Is it? Tom Green County of blessed memory! My father when he was a young man enlisted with Tom Green. Old Tom Green of blessed memory in the cause of the Confederacy and the delight of himself all the times of his life. I have always thought of Tom Green County, and can it be that the citizens of Tom Green County will permit liars to come and tear away the reputation of men even of the Santa Fe Railroad Company, with all its miles and millions at their backs?"

Again: "The issue in this case is whether the powerful influence of the mighty corporation will prevail or whether the individuals may have justice in contests with them."

Further he said: "To show you the power of the railroad and what a poor man is up against, or what any man is up against, there is a suit against the Santa Fe Railroad Company and on trial they asked why we did not bring Dr. Braswell here. Well, we haven't got money enough to bring every doctor. They have known for a year and a half or two years that Braswell examined this man. If they wanted Braswell they could get him, if it is in Dooley's depositions." Said last remarks were excepted to because they were an appeal to the prejudices of the jury; that it was an effort to array a poor man against a rich, and to create an impression that this was an unequal fight, and that the plaintiff could not cope with the charged wealth of the defendant; and further, because there was no evidence before the jury as to how long, if at all, the de-

fendant had known what Braswell knew, or that it had ever known what his testimony would be; and defendant then and there requested the court to charge the jury to disregard these remarks, which it declined to do. Thereupon counsel for plaintiff, immediately upon the ruling of the court, stated to the jury: "They asked us why we didn't have Braswell. I tell them they have known for a year and a half that Braswell examined this man. They have the regular trains and the specials; they can bring them. It would break a prosperous man to compete with them in the trial of a case. Now let us see about Braswell. They didn't bring Braswell here. Didn't bring the other doctor here." This was also excepted to with the request that the court instruct the jury not to consider it, which was refused.

Further, while Mr. Lee of counsel for appellant, in his argument to the jury, was commenting on the failure of the plaintiff to take the deposition or produce the testimony of Dr. Braswell, who had examined plaintiff at Cleburne, counsel for plaintiff was permitted, over objection, to interrupt him with the question "Are you willing that I may read to the jury now the report made to me by Dr. Braswell as to Dooley's condition when he examined him?" It was urged that this question was improper, because such report was not admissible in evidence because the testimony had closed and the parties were only entitled to argue the case on the basis of the testimony that had been produced, or the failure to produce testimony, where such failure formed a legitimate basis for argument, and counsel for plaintiff had no right by such question to create in the minds of the jury the impression that Braswell's testimony would have been favorable to plaintiff, and had no right, in effect, as he did, to testify by this question that he had a statement from the said Braswell that was favorable to the plaintiff."

Again, while appellant's counsel Wright and Lee were each commenting on the absence of Mrs. Dooley's (plaintiff's wife) testimony, and calling the jury's attention to that fact, it having been shown that she was eight months advanced in pregnancy, which fact must have been known to plaintiff and his counsel at least for several months, and they could have easily taken her deposition; thereupon plaintiff's counsel was allowed to interrupt appellant's counsel with the question "Are you willing to take Mrs. Dooley's testimony tonight, with a stenographer of your own selection?" Whereupon counsel for appellant excepted on the ground that such proposal was improper, and that as the testimony had closed, plaintiff's counsel had no right to attempt to meet his argument on a legitimate deduction sought to be drawn from their failure to take her deposition at proper time, by such suggestion and question, and in addition requested the court to charge the jury to disregard such question and tender of said counsel, which the court declined to do. It appeared from the evidence that Dr. Linn, a resident physician, at the instance of plaintiff, had examined him in connection with the physician who did testify in his behalf, but said Linn was not used as a witness in the case. Counsel for appellant commented upon this failure upon the part of plain-

tiff to use the testimony of said Linn, and during said closing argument, said counsel for plaintiff, replying thereto said: "They have asked why we didn't take Dr. Braswell's (depositions) and did not put Dr. Linn on the stand. Gentlemen of the jury, if they will agree to it, I will let Dr. Linn, or whatever his name is, write the ·verdict of this case, will you?" (The last question "Will you?" being addressed to defendant's counsel.) When these remarks were objected to by counsel for appellant as being improper, wholly unwarranted and an abuse of the privileges of argument, and an unwarranted reply to the criticisms by defendant's counsel of the plaintiff for not putting Dr. Linn on the stand after they had caused him to examine the plaintiff, counsel for plaintiff replied: "I have practiced law 19 years and have never been criticised in my life in a closing argument, even in four death penalty cases." And when this last remark was excepted to by counsel for appellant, plaintiff's counsel continuing said: "If you want Dr. Linn on the stand, we will send for him." This remark was likewise excepted to, because the testimony had closed, the witnesses had been discharged, and the closing argument was being made; and therefore it was improper by thus making a tender, to create in the minds of the jury the impression that Linn would have testified favorably to them, when they had had the opportunity to put him on the stand and let the jury weigh his testimony. In addition to duly excepting to all of said argument and conduct of counsel during the progress of the case, appellant presented and requested a special charge telling the jury that such interruptions of counsel and intimations as made by them were improper, and that they should, as far as possible, eliminate the same from their consideration, and not be controlled and influenced thereby. This was also refused.

The first bill taken, it seems to us, shows that counsel for appellee sought to obtain probably a larger verdict than he thought the facts would warrant as a punishment to appellant for bringing persons whom he called liars to sustain their contention. It is not the object of the law to give damages by way of punishment for actual·injury suffered by reason of negligence, but only as compensation therefor. This being true, it is improper, we think, for counsel to tell the jury or to intimate, as was seemingly done here that appellant should be punished by assessing damages for bringing false witnesses to testify in their behalf, if such in fact was the case. See Western U. Tel. Co. v. Smith, 113 S. W., 766; Texas C. R. Co. v. Ploedger, 81 S. W., 754.

We think the remaining bills as above outlined, show an unwarranted departure from the rules of law, which require counsel in their address to the jury to remain within the record and discuss only matters that are presented thereby. While we do not believe in abridging the right of counsel to draw all legitimate and proper deductions from the facts in evidence, still we do not feel that they should be allowed, as shown by this record, to make inflammatory and impassioned appeals to juries, unwarranted by the evidence, the tendency of which is to arouse their sympathy or create an unjust prejudice against a party litigant. When

such transgressions as are shown here are permitted, it is impossible for us to say what effect they may have had upon the jury in securing a verdict. And while, in view of another trial, we will refrain from a discussion of the facts, still, we are impressed with the belief that it is highly probable that the argument of counsel as complained of, may have had much to do with obtaining the result. We therefore sustain the objections made. (Chicago, R. I. & T. Ry. Co. v. Langston, 19 Texas Civ. App., 568, 47 S. W., 1027; 48 S. W., 610; Chicago, R. I. & T. Ry. Co. v. Langston, 9 Texas, 709, 51 S. W., 331; Texas & St. L. Ry. Co. v. Jarrell, 60 Texas, 267; Dillingham v. Scales, 78 Texas, 205. See also, Chicago, R. I. & G. R. R. Co. v. Swann, 127 S. W., 1164.)

Nor can we approve the conduct of counsel for plaintiff, as shown by the above bills in interrupting counsel for appellant while he was addressing the jury in the manner allowed, because it appears from the record that his deductions and conclusions were proper; that is to say, we think counsel had the right to call attention to the failure on the part of plaintiff to take the deposition of his wife, under the circumstances disclosed; as well as the failure on his part to introduce the witnesses Linn and Braswell, or take their depositions. We think it was also improper for counsel for plaintiff to interrupt appellant's counsel, when the bills were being taken, by a proffer on his part to have Dr. Linn write the verdict; and the statement that he was willing at that juncture to have his wife's depositions taken by a stenographer and used, or to read the statement of Dr. Braswell, which he claims to have had. All this conduct had a tendency, in our judgment, to prejudice the case of appellant in the eyes of the jury, and to impress them with the belief that plaintiff was willing that all these matters should go to them, as suggested by his counsel. It put appellant at a great disadvantage, because it was in no position to accept such tender, and counsel for plaintiff must have been well aware of this, and the probable effect that such proffer would have upon the jury. We are not authorized to speculate upon the resultant effect of this conduct, because if it appears to us that it was reasonably calculated to influence the jury, then it becomes our duty to set aside the verdict; and since we feel that it probably had this effect, we sustain these assignments. See Missouri, K. & T. Ry. Co. v. Walden, 46 S. W., 87; Chicago, R. I. & T. Ry. Co. v. Jones, 81 S. W., 60; Fordyce v. Withers, 1 Texas Civ. App., 540, 20 S. W., 766; Missouri, K. & T. Ry. Co. v. Woods, 25 S. W., 742; Trinity & S. Ry. Co. v. O'Brien, 18 Texas Civ. App., 690, 46 S. W., 389; Whittaker v. Thayer, 110 S. W., 787; Rotan v. Maegden, 24 Texas Civ. App., 558, 59 S. W., 585; Chicago, R. I. & T. Ry. Co. v. Musick, 33 Texas Civ. App., 177, 67 S. W., 219; Railway Co. v. Jarrell, supra; Ft. Worth & D. C. Ry. v. Burton, 25 Texas Civ. App., 63, 60 S. W., 316.

The thirty-second assignment complains of the refusal of the court to allow the defendant to refer to and use medical books and standard medical authorities in the cross-examination of Dr. Noble, a witness for plaintiff, and alleges error in refusing to allow the defend-

ant to read from such medical books and standard authorities, and to ask the witness whether he agreed with the statement in such authorities contained or not. Upon the trial Dr. Noble, who testified in behalf of the plaintiff, among other things, stated that he had carefully examined the plaintiff on more than one occasion, once immediately after the alleged injury and the last time just a few days before the trial, and that in his opinion plaintiff was suffering from traumatic lumbago, resulting from the injuries sustained by him, and that this condition, in his judgment, was permanent; that the same incapacitated him from performing manual labor, etc., and from which he would not likely recover. Other medical experts on behalf of appellant had testified that plaintiff was not seriously injured, and that patients suffering from traumatic lumbago usually recovered, at most, within a few years. On cross-examination of Dr. Noble, appellant's counsel propounded the following question: "It is a fact that the usual course of traumatic lumbago is to get well, isn't it?" To which the witness replied: "No, sir, some cases get well, but it is not the usual case, taken altogether." Whereupon counsel for appellant exhibited to the witness Noble a work on the diseases of the nervous system by Pearce Bailey, a lecturer in Columbia University and hospitals and schools in New York City, and offered to show by said witness that the work of said Bailey so exhibited to him was a standard medical authority, one that was relied on and accepted by the profession as a standard, and then and there desired to ask said witness if it were not true that said Bailey in said work said as to traumatic lumbago: "Complete recovery is the rule in lumbago, a disorder which is never fatal." And desired to ask said witness if he agreed with Bailey's opinion, and if not why not. Plaintiff objected to the use of such book in the cross-examination of said witness, on the ground that it was hearsay and not the proper subject of cross-examination, which objection was sustained by the court, to which the defendant excepted, stating that he desired further to examine said witness as to other portions of the work of said Bailey, and what he said about traumatic lumbago, as well as to examine said witness based on statements laid down in the work of Prof. Osler of Johns Hopkins University, entitled "The Practice of Medicine," under the head of "Traumatic Neuroses," offering to show by said witness that said Osler was a standard authority, and that his work was one acted on and relied on by the medical fraternity and accepted as a standard; and further that traumatic lumbago was, in medical classification, one of the traumatic neuroses, it being, in our judgment, unnecessary to set out the passages from said books which appellant proposed to read.

We believe the court erred in refusing to allow appellant to thus use the books mentioned, and to cross-examine said witness as to the statements therein made. In the case of Gulf, C. & S. F. Ry. Co. v. Farmer, 102 Texas, 235, 115 S. W., 260, Mr. Justice Gaines, in passing upon a similar question, quotes with approval the following extract from the opinion of the court in the case of Egan v. Dry Dock Co., 12 App. Div.,

571, 42 N. Y. Supp., 188: "A reference to books in such cases is not made for the purpose of making the statements in the books evidence before a jury, but solely for the purpose of ascertaining the weight to be given to the testimony of the witness." It is further said, as shown by the syllabus in said case: "On cross-examination of a medical expert for the purpose of testing his knowledge, extracts from medical authorities, the author being named, may be incorporated in the question," especially when it is shown that such work is a standard authority. A number of authorities are given in the opinion in support of his conclusion.

In Vol. 5, Ency. Evid., pp. 634 et seq., it is said: "Where the witness has been questioned to bring out his skill as an expert, considerable latitude ought to be allowed on cross-examination to bring out the facts as to his competency to give evidence of that character. . . ." It is further said: "It is well settled that an expert who has given an opinion upon the question submitted to him may be asked on cross-examination to state the reasons for the opinion, and to disclose fully the basis of his opinion and the data to which he resorted in forming his conclusion. On the cross-examination of an expert greater lattitude is allowed as respects the use of books than is given on his direct examination. It is competent to inquire of him as to the extent of his knowledge of and his familiarity with accredited standard authorities; but since books are not admissible as original evidence, they should not be admitted on cross-examination, where their introduction is sought, not for the contradiction of something maintained by the witness, but simply to prove a contrary theory. It has been held that it is proper to read, or for the witness to read, extracts from standard authorities upon the subject matter involved, and thereupon to ask him whether or not he agrees with such authorities, and to compare his opinion with those of the writers."

We think the court erred in sustaining the objection, and in not permitting counsel to cross-examine said witness as proposed.

It was shown by the evidence that Drs. White and Scott were in charge of the company's hospital as its regular physicians, at Temple. During the examination of Dooley, he claimed that several years before the occurrence in question, when his hand was injured, that said physician neglected to give him proper treatment when taken to said hospital for attention. Whereupon appellant offered to show what the custom of said physicians was at the time Dooley claimed to have been neglected, as to giving prompt, careful and proper attention to patients brought to said hospital; it appearing that on account of the lapse of time and the many patients attended by them since the time Dooley claims to have been neglected, they were unable to recall the transaction and to say affirmatively that it did not occur. We think this evidence was admissible for the purpose offered, and therefore hold that the court erred in refusing to permit its introduction.

Plaintiff testified that there was such a violent shock and concussion of the train at the time of the collision, that he was thrown some twenty-five feet from the rear platform of the car into the car through the ladies' saloon, passing the first tier of berths to about the middle of the second tier, and that he fell with such force upon his lantern as to dislocate a kidney and cause traumatic lumbago. For the purpose of showing the character of the collision, as well as to discredit Dooley's version thereof, appellant offered to show by several witnesses who were in the same coach that no other persons were injured, and what effect said collision had upon them. Upon objection by plaintiff this evidence was excluded. As res gestae of the transaction, we think it was clearly admissible, and hold that the court erred in excluding it.

Since plaintiff is not entitled to recover for fees paid in obtaining the testimony of experts, it is immaterial what may have been the opinion of such expert as to the reasonableness of his charge therefor, and the objection to this testimony should have been sustained.

For the errors indicated, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*