**WHITSETT et al. v. WHITSETT.**

No. 14827.

Court of Civil Appeals of Texas.
Fort Worth.

March 14, 1947.

Rehearing Denied April 18, 1947.

116

James W. Witherspoon, of Hereford, Bullington, Humphrey & Humphrey and Leslie Humphrey, all of Wichita Falls, for appellants, Virginia Ethel Whitsett, Effyle Kelly and R. L. Thompson.

J. Walter Friberg, of Wichita Falls, for appellant Freda Kelly.

King, Dawson & Jones, Harold Jones, Bert King and Arch Dawson, all of Wichita Falls, for appellee.

HALL, Justice.

This is a suit for divorce and cancellation of a written trust instrument instituted in the district court of Wichita County, Texas, by one John L. Whitsett of said county, hereinafter styled appellee, against his wife, Virginia Ethel Whitsett, one of the appellants herein. The allegation of appellee's original petition prayed for divorce and for partition of the community property. Later he filed his supplemental petition seeking to interplead new parties, to wit, R. L. Thompson, of Deaf Smith County, Texas, as acting trustee under a trust deed; Effyle Kelly, his daughter; and Freda Kelly, his infant granddaughter, and attached the trust agreement to same. Then again on April 8, 1946, appellee filed a second amended original petition (the first one having been filed prior to the supplemental petition) wherein the above named parties were made defendants and within two days, R. L. Thompson, Effyle Kelly and daughter, Freda Kelly, and Virginia Ethel Whitsett filed their pleas of privilege, to be sued in Deaf Smith County, Texas. Walter Friberg, an attorney of Wichita Falls, was appointed guardian ad litem to represent Freda Kelly. After these pleas of privilege were filed and duly controverted, the appellee filed his third amended original petition June 15, 1946, upon which the case was tried before a jury after agreement between the parties to try the venue issue along with the case.

In accordance with the jury's answer to certain special issues the court, after having overruled the pleas of privilege, entered judgment for appellee granting him a divorce and canceling the trust instrument. From such adverse action the parties defendant perfect this appeal. They will hereinafter be referred to by their names and as appellants.

They assigned 36 points of error which we will not undertake to enumerate. After careful study of the pleadings and evidence in this case we have come to the conclusion that appellee pleaded two separate and distinct causes of action for a divorce and partition of the community property as against his wife. Second, he filed a cause of action against one R. L. Thompson of Deaf Smith County, Texas, as trustee, his wife, his daughter and granddaughter, as beneficiaries, for the cancellation of a recorded trust instrument wherein said Thompson is acting as substitute trustee by

order of the district court of Deaf Smith County.

Since we find that there were two separate and distinct causes of action reflected from the pleadings of appellee, we shall first discuss the divorce case as between appellee and his wife, the appellant Virginia Ethel Whitsett.

■ We find appellee's original petition was filed October 10, 1945, and that appellee was restored his civil rights on April 25, 1945, which reflects the contention of appellant that the case was filed a few days prior to the time appellee had resided as a citizen in Wichita County for the statutory time of six months before filing his petition. However, the case went to trial on appellee's third amended original petition filed June 15, 1946, which date has been held the filing date of the petition. Bateman v. Bateman, Tex.Civ.App., 188 S.W.2d 866 and cases cited therein.

The Court had the aid of the jury's finding to assist him in rendering judgment granting appellee a divorce.

■ We have painstakingly reviewed the testimony transmitted in the unusually large statement of facts and after observing the many assigned errors to the introduction of testimony pertaining to the side bar remarks made by attorney for appellee; to the offer of compromise and settlement made to appellant, Virginia Ethel Whitsett, while she was on the witness stand; and the many assigned errors to the argument of counsel for appellee in his closing remarks to the jury; have come to the conclusion that even though some of the errors complained of may not be well founded pertaining to a trial on the cancellation of the trust, yet they were harmful errors in the divorce case; and since we find the Court erred in overruling the pleas of privilege of the defendants pertaining to the trust case, such testimony surrounding the cancellation of the trust became prejudicial to the jury and influenced them in arriving at their findings to the effect that appellant Virginia Ethel Whitsett committed harsh and cruel treatment towards the plaintiff. Even though it is the law that the jury's finding is merely in the form of an advisory capacity when their findings are for divorce,

and that the Court will not consider inadmissible testimony in arriving at a decision granting divorces; yet the law is also laid down that if the jury return a verdict to the effect that no such harsh and cruel treatment was committed by the appellant, Virginia Ethel Whitsett, then in that event the court would be without authority to grant the divorce. McCrary v. McCrary, Tex.Civ.App., 230 S.W. 187; Grisham v. Grisham, Tex.Civ.App., 185 S.W. 959. We find that the following constituted reversible error.

In appellants' point of error No. 7 wherein they complain of appellee's counsel committing error in his closing argument in that he made an impassioned plea under great emotion, strain and stress; that he went beyond the record and the facts; that he vouched for the truth of his client's statements; and for his mental stability; and that he referred with violent and intemperate language towards the conduct of the defendant Virginia Ethel Whitsett comparing her conduct with that of the enemies of our nation in the last war in establishing and maintaining concentration camps; and in referring to the financial conditions of the parties, picturing his client as being a pauper and his wife, appellant, as being wealthy; and informing the jury as to the effect of their answers, etc.

■ For brevity's sake we will not point out all of the excerpts from counsel's argument which might tend to influence the jury in arriving at their verdict but we will point out the following: "I have sworn eternal hatred to every form of human tyranny and I say to you gentlemen here this afternoon that I have witnessed, and it is undenied and unchallenged, the most terrifying form of tyranny that I have ever seen one human impose upon another in my life, outside, perhaps, of what we read of the concentration camps. * * * I have had cases before where all the money was on one side, where the client had nothing and could get nothing, and he is still in that fix until this hour. * * * I have been in them before and I wasn't anxious to get into this case and I looked and I talked * * * I

said that I knew where the money was and I don't intend to undertake to deceive this jury, never in my life would I."

Referring to Mr. Humphrey, counsel for appellant, Virginia Ethel Whitsett, counsel stated as follows: "But here is a man that is a master mind and I don't say that to reflect on Mr. Humphrey. I say he is far seeing and he is wise and he sees way down the road beyond the others and he foresaw that this might come; and, if it did, he wanted to put his wife and baby in so he would have something to conduct a funeral on before you. That is what he did."

Referring to the appellant, Virginia Ethel Whitsett, "Here is the way of all women. Mr. Kipling had a thing to write about the female of the species and it was this:

"'When the Himalayan peasant meets the he bear in his pride;
He merely shouts to scare him and make him turn aside;
But, when he meets the she bear, it is to rend with tooth and nail
For the female of the species is more deadly than the male.'"

Further continuing, Mr. King said: "She has made up her mind she wants this money and is going to keep this money, come hell or high water, and she is at it with Effyle gone, with the trustee gone, and even appointed a trustee and refused to turn it over to him, and John sits without the pail on a hundred dollars a month to the end of time."

Referring to the jury he makes this statement to them: "Now, how would you like to live with a woman like that, that treated you, as her own witness said, as a baby * * * And now, she thinks she has got the world by the tail and a down hill drag on it."

Referring to the jury again he testifies without being sworn as follows: "You have been kind. God knows you can't ever —you can't ever realize how I appreciate it, but I want to say this for John, that I have never known a kinder, lovelier, more decent client in all my life, or more in-telligent, and I would even say learned one * * *"

And as to his informing the jury to the effect of their answers he made the following argument: "And on this first question and the second question I want you to an-swer that she had been guilty of harsh and cruel treatment so John can't live together with her."

This objection was sustained by the Court whereupon counsel for appellant moved for a mistrial. The argument con-tinued.

Other argument pertaining to the trust which we find improper and would have a tendency to influence the jury in arriving at their verdict in the divorce case, some of which are as follows: "They took away from him in their greed and in their desire to fence him in and turn it all over to me— me—me—me—and now, me has got it, hasn't she? * * * The proof shows that they brought these lawyers down here and built a fence around him and gave him $100 a month. I read it from begin-ning to end thinking surely for God's sake that my friend has put in there somewhere that John—they give him two years in which to get well, three years, four years, or five years. No it ain't in that contract. It takes away all of it through life and through death. They don't even let him be generous with his child when he dies or his granddaughter. * * * If ever I have in my born days represented a man that I am proud to represent as a lawyer; I ought to represent those and I ought to deliver the needy when they are right, and the poor also, and him that hath no helper, and never in my life, I say to you sincere-ly, if I have got an ounce of truth in my veins, never in my life have I been so will-ing, after I got into the current of this, to give this time to John Whitsett to try to deliver him from the chains that bind him * * * —but I can't do it—you alone can do that."

We cite the following authorities to sup-port our action in holding that the above arguments are reversible error: Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054; Robbins v. Wynne, Tex.Com.App., 44

S.W.2d 946; Rule 269(e), Texas Rules of Civil Procedure; Ragsdale v. Ragsdale, 142 Tex. 476, 179 S.W.2d 291; Gulf, C. & S. F. R. Co. v. Dooley, 62 Tex.Civ.App. 345, 131 S.W. 831; Ward v. Brown, Tex. Civ.App., 122 S.W.2d 684; Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302; Chapin v. Putnam Supply Co., 124 Tex. 247, 76 S.W.2d 469; Chicago, R. I. & T. R. Co. v. Langston, 92 Tex. 709, 50 S.W. 574; First Natl. Bank at Sweetwater v. Porter, Tex.Civ.App., 204 S.W. 463.

■ We find the following statement made by appellee's attorney addressed to the appellant, Virginia Ethel Whitsett, while on the witness stand, to be prejudicial error: "Q. All right, I want—now, you needn't answer this until they have time to object. I want at this time to ask, and offer you the right to divide the two tracts, or let John divide the land into two tracts; and, if you divide it, we will take either half. We will take either piece and divide the other the same way. I want to know what you think of whether that is equitable or not." (S.F. p. 205)

To which defendants' counsel objected: "We object to that as inequitable. He is not making that offer, we challenge, in good faith. It is an offer of compromise in Court, attempting to embarrass the witness. If this woman and John Whitsett want to settle this lawsuit away from the influence of their attorneys, we have no objection to them doing it." (S.F. p. 205)

The Court sustained the objection, and plaintiff's counsel, in the presence of the jury, continued the following argument: "If the Court please, I want to be heard. I want to amend the question first to this effect, that I do here and now offer in good faith for John to divide it into two tracts and give her her choice, and the rest to be likewise divided among them, and I offer her that I do that to show that I want to do equity, and I am giving her the 320 acres, or one half of a section, as her property that is John's separate property, half of that section he owns, and I offer her that here and now and I want to know whether or not she considers that

fair and equitable. She has plead that it ain't." (S.F. pp. 205, 206).

To such statement the appellant timely objected and among other things asked that a mistrial be declared which we find should have been granted for the reasons first that the law will not tolerate any settlement or offer of settlement to be made before the jury. Second, that such statement of settlement was not competent evidence but was highly prejudicial, improper and pre-supposed grounds for divorce.

Third, that the property which he proposed to divide in the settlement did not belong to her but the legal title was in the possession of the trustee and she could not accept the proposed settlement without forcing her to break the trust which apparently she did not want to do; if she refused to accept the proposal it would result in prejudicing the minds of the jury against her for divorce. Sullivan v. Missouri, K. & T. R. Co., 110 Tex. 360, 220 S.W. 769; 17 Tex.Jurisprudence, 563; Merchants' Cotton Oil Co. v. Acme Gin Co., Tex.Civ.App., 284 S.W. 680; Hamilton v. Hamilton, Tex.Civ.App., 185 S.W. 938.

■ The statement was a self-serving declaration and therefore inadmissible. Worth Mills v. Copeland et al., Tex. Civ.App., 33 S.W.2d 580; Boone v. Moore, Tex.Civ.App., 246 S.W. 685. We find that the above statement of compromise comes within the rule that an offer to compromise and settle made by one party cannot be introduced by the other party. It is really more dangerous than if the statement referred to an offer of settlement made prior to the institution of the suit because such a compromise and settlement offered prior to the time of the institution of the suit may be considered as a person buying his peace, while the language used by the eminent attorney for appellee during the trial of this case places the appellant in a dilemma of either agreeing to break the trust or to prejudice her rights before the jury to the effect that she is not only unfair in the settlement of the community property rights (which in fact such property was in the hands of the trustee) and would thereby have a ten-

dency to assist the jury in arriving at their verdict for divorce on the questions of cruel treatment. It would further have a tendency to produce a self-serving atmosphere before the jury to the effect that the appellee desires to be fair but that the appellant does not.

We find that appellants' point No. 9 is well taken wherein they object to appellee's attorney reading from a hearsay statement of a social worker. The following question we find is improper under such circumstances: "Q. But the worker said you were worried over the consideration of Mr. Whitsett's furlough." Because the social worker is not under oath and such statement is hearsay. Texas Jurisprudence, Vol. 17, Page 521, Pages 350, 351; Davidson v. Swanson, Tex.Civ.App., 24 S.W.2d 776; Klein v. Stahl, Tex.Civ. App., 219 S.W. 523; Henslee v. Henslee, 5 Tex.Civ.App. 367, 24 S.W. 321.

We consider appellants' point No. 11 well taken as a reversible error, by counsel for appellee to propound the following questions over objection of the appellants. "Q. You have talked a lot about John's insanity, several of your family have been insane, haven't they."

Then in reply to appellants' counsel objecting to such testimony as being prejudicial and improper appellee's counsel replied before the jury: "Oh, it is not, because we are going to show here, your Honor, that she is of the same type." To which statement appellants timely objected and by the court overruled. See authorities above.

The point No. 16 is well taken wherein the appellants object to the appellee proving the amount of wages the daughter Effyle received for awhile because it has no bearing on the case and is calculated to inflame and prejudice the minds of the jury. Such questions should not be asked, such as: "Q. You know as a matter of fact that she not only worked but that she made some $200.00 a month didn't she." It is also improper in the trial of a case to compare the wealth of one party as against the poverty of the other.

We find appellants' point No. 19 well taken wherein counsel for plaintiff over the objection of the defendant was permitted by the trial court to solicit hearsay testimony from plaintiff's witness, John Davenport, as to the statement made by Dr. Mackechney, even though such questions and answers were later withdrawn by the attorney, such hearsay questions were as follows:

"Did Dr. Mackechney tell him and in your presence that if he went back that his wife—that it would be bad for him because of her." The witness over the objection was allowed to testify as follows: "A. I don't know whether John was there or not but Dr. Mackechney told me not to let him go back."

The appellants took a bill to plaintiff's counsel asking such inadmissible questions and adducing such inadmissible answers from the witness and then withdrawing the same. Such error within itself might not be considered reversible but it does blend in with the other errors in making the case reversible, because so many errors have a tendency to influence the jury in arriving at their verdict. Bain Peanut Co. of Texas v. Pinson et al., Tex.Com.App., 292 S.W. 203, on rehearing Tex.Com.App., 294 S.W. 536; Texas Jurisprudence, Vol. 3, Page 1267, Sect. 880; Smerke v. Office Equipment Co., supra; Sproles Motor Freight Lines Inc. v. Long, 140 Tex. 494, 168 S.W. 2d 642.

We find that the appellants' point of error No. 31 is well taken wherein the court admitted appellee's counsel over the objection of the appellants' counsel to state to Dr. Charles H. Brown in the form of a question as follows: "Q. And there is not any wonder that the doctors advised him when he got out of the asylum not to go back to her."

There are many other assigned errors by appellants, some of which we find merit in but we deem it unnecessary to discuss. This is one of those cases wherein the learned trial judge was placed in a dilemma of either granting a mistrial or continuing with the hope that the errors committed would become harmless. No doubt the real cause of some of the errors being committed is set out in appellants' point No. 35 which signifies that the leading counsel

was laboring under much mental stress, strain and shock from receiving notice, during the trial, of the untimely death of a member of his own immediate family; thereby leaving the court without the proper aid, support and cooperation of the plaintiff's attorney to eliminate errors which is so necessary in the trial of cases.

Having reversed that portion of the judgment in granting appellee a divorce from appellant, Virginia Ethel Whitsett, we will now discuss the other cause of action tried at the same time against the trustee appellant, R. L. Thompson, Virginia Ethel Whitsett, Effyle Kelly and Freda Kelly, wherein the Court overruled their pleas of privilege to be sued in the county of their residences, to wit, Deaf Smith.

In order to properly construe the trust instrument to ascertain whether the Court committed error in overruling the pleas of privilege, we find it necessary to quote extensively from the same as well as to recite in substance what it contains. We construe the instrument to be an express trust wherein the appellee, John L. Whitsett, and wife Virginia Ethel Whitsett, on the 25th day of April, 1945, conveyed to one Charles Ware, trustee, of Potter County, Texas, for the following purposes, uses, and for the term, said trust shall continue and be in full force and effect until either the death of one of the Donors; and upon such death the estate of such Donor shall pass to his or her bodily heirs; and/or it may be sooner terminated by the mutual written consent of the Donors duly acknowledged by them and filed of record in Deaf Smith County, Texas, and in that event, the trustee shall thereupon reconvey all of the trust's assets to the Donors.

Said instrument further sets out that the trustee shall have full power and authority to manage and control said estate; to execute agricultural and grazing leases on the land; to receive and collect all rentals and monies belonging to such estate and to disburse the same for necessary expenses; to employ agents and servants that are necessary to manage said trust. That after the payment of all necessary expenses of the trust including taxes, the trustee shall disburse the income from the trust then to the Donors as follows: Two-thirds thereof to the Donor, Virginia Ethel Whitsett for the support of herself, the daughter and granddaughter of the Donors; One-third thereof to the Donor, John L. Whitsett for his support with a guarantee of a minimum sum of $100 per month. In the event of illness or unseen expenses needed by the Donors, or either of them, the said trustee is vested with the discretion to anticipate income or to use the principal of the trust for such emergency and his judgment in the matter shall be conclusive. Said trustee has the authority to advance from the income or corpus of this trust the necessary expenses or funds for the proper care, maintenance, and education of the grandchild, Freda Kelly, whose father was killed in Italy during the war.

Said instrument further sets out that the 69th Judicial District Court shall appoint new trustees in the event the Donors cannot mutually agree upon a substitute trustee and that such order of appointment be duly filed for record in Deaf Smith County, Texas. The trustee shall furnish to each of the Donors an annual account. The trust conveyance reserves the right for either party to occupy the 200 acres in section No. 54 as their homestead. All of the land covered by the trust conveyance is located in Deaf Smith County and described as follows: All of section No. 47, block K-4; all of section No. 54, block K-4; all of section No. 53, block K-4; all of the south one-half section No. 48, block K-4; the south 390 acres out of section No. 72, block K-4. The caption of the instrument is styled the State of Texas, County of Deaf Smith. The acknowledgements show the instrument was executed in Wichita County, Texas. The trust instrument further conveys to the trustee all personal property belonging to the parties.

There has been some question raised as to whether or not the beneficiaries under the trust may be proper or necessary parties. We find the following is an exception to the general rule, "cases where the suit is brought for the purpose of canceling the instrument creating the trust, the beneficiaries are considered to be adequately represented by the trustee and although the beneficiaries are proper parties they are not in such cases necessary parties." 42

Texas Jurisprudence, Page 148, and cases cited thereunder. Cavers et al. v. Sioux Oil & Refining Co. et al., Tex.Com.App., 39 S.W.2d 862. Since there are only three beneficiaries named in the trust besides the appellee, we find that they are necessary parties under the general rule: Monday et al. v. Vance, 11 Tex.Civ.App. 374, 32 S.W. 559; Alexander et al. v. Alexander, Tex.Civ.App., 265 S.W. 1072; Ebell v. Bursinger, 70 Tex. 120, 8 S.W. 77; Schuster v. Crawford, Tex.Civ.App., 199 S.W. 327, writ dismissed; Smith v. Smith, Tex. Civ.App., 200 S.W. 540, part in point, page 548; 42 Texas Jurisprudence, Page 778; Vercelli v. Provenzano et al., Tex.Civ.App., 28 S.W.2d 316.

■ Since the real estate involved in the cause of action is located in Deaf Smith County, where the appellant, Thompson, trustee and the beneficiaries reside and since we have held this cause of action to be separate and distinct from a divorce cause of action, we find that the Court committed error in overruling the pleas of privilege of the appellants for the reason that they are entitled to be sued in the county of their residence and/or more particularly in the county where the land is located. Ex parte Scott et al. v. Scott, 133 Tex. 1, 123 S.W.2d 306; Carstairs v. Bomer, 119 Tex. 364, 29 S.W.2d 334; Section 14 of Article 1995 R.C.S.

■ The Courts will not engraft an additional exception to Article 1995, R.C.S., Vernon's Ann.Civ.St. art. 1995, even though it might avoid a multiplicity of suits. Union Bus Lines et al. v. Byrd et al., 142 Tex. 257, 177 S.W.2d 774.

■ Appellee filed a motion to dismiss this appeal on the ground that appellants filed their motion for a new trial prior to date of entry of a final judgment. The transcript shows that judgment was entered on September 4, 1946. Motion for new trial filed by all appellants except Freda Kelly on September 12, 1946. Leave granted above named appellants including Freda Kelly to file amended motion for new trial September 30, 1946, and said amended motion for new trial was filed on said date. The motion for new trial was overruled by the Court on the 28th day of October,

1946, wherein the Court in response to a portion of paragraph 20 of said motion for new trial, to wit: "And the judgment is further erroneous in respect to the recital that the community estate has 2000 bushels of wheat which is subject to partition. The evidence shows that only the rental part of said 2000 bushels of wheat is on hand", set out in his order overruling the motion for new trial the following:

" * * * is of the opinion that said motion should in all things be overruled, except that the original judgment heretofore rendered on the 23rd of July, 1946, recites 'that the community estate now has on hand 2000 bushels of wheat which is subject to partition', and in said original judgment the court awarded 1000 bushels of said wheat to the plaintiff, John L. Whitsett, and 1000 bushels to Virginia E. Whitsett. Said judgment in this respect is in error, in that it affirmatively appears from the evidence and agreement of counsel that only 550 bushels of wheat is on hand, and said judgment is modified so as to read in this respect as follows:

" 'It further appearing to the court that the community estate now has on hand 550 bushels of wheat which is subject to partition and that it is fair and proper to divide such wheat between the parties, the court herewith awards 275 bushels of such wheat to John L. Whitsett and since such wheat is in the possession of Virginia E. Whitsett, she is here ordered and directed to surrender and deliver 275 bushels of such wheat to John L. Whitsett.'

"Except in this respect the motion to set aside the judgment of the court and the verdict of the jury rendered herein on the 23rd day of July, A. D. 1946, is in all things overruled, to which ruling, judgment, and order of the court the defendants, Virginia Ethel Whitsett, Effyle Kelly, R. L. Thompson, and Freda Kelly, appearing by her attorney ad litem Walter Friberg, in open court then and there duly excepted, and in open court gave notice of appeal to the Court of Civil Appeals for the Second Supreme Judicial District of Texas, at Fort Worth * * *."

Said instrument is styled and endorsed "order overruling defendant's amended motion for a new trial." Nowhere in the rec-

ord does there appear any statement or notice that the Court has entered or amended his judgment except as above stated in the Court's order overruling motion for new trial. Even though it may be argued that the Court did amend his former judgment in such fashion; yet, it may also be construed to be sustaining a small portion of the 41 page motion for new trial and overruling the balance. Be that as it may, the overruling of the motion for new trial was after the amendment was made and the motion for new trial was filed subsequent to the rendition of the judgment it assails. Rule 306c. And there was nothing entered of record pertaining to the amendment of the judgment after the overruling of the motion for new trial. After the trial court sustained a portion of the motion for new trial, instead of granting it, and overruling the balance of same, the parties immediately gave notice of appeal. We deem it inadvisable and would have incurred unnecessary expense for the appellants to have been required to re-file the 41 page motion for new trial and have a new file mark placed upon it. We do not find the rules of the court to place such onerous burden on appellants; however, we do not find any cases directly in point on this subject; but we do find that the new rules are made to prevent extra expense to litigants and are to be liberally construed. Rule 1, T.R.C.P.; Smirl v. Globe Laboratories, Tex.Sup., 188 S.W.2d 676.

Appellee cites the case of Swanson et al. v. Holt, Tex.Com.App., 87 S.W.2d 1090 in support of their motion for dismissal. We find the facts in the Swanson case are much different to the facts surrounding the appeal in this case, in that, in the Swanson case, there was a motion made to modify the judgment; a hearing was had for that specific purpose; and a nunc pro tunc order amending the judgment was filed in the records of the court, giving notice to the world that such judgment was amended and the court redated his former judgment to correspond with the order as follows:

"It is further ordered that this order take effect as of the 7th day of August, 1931." The original judgment was entered July 1, 1931. A further distinction between the Swanson and the instant case is that the amendment in the Swanson case changed the validity of a deed as to certain parties and held it void as to others; while in the original judgment it decreed entirely void the deed to all parties. In the instant case there appears in the order of the court overruling the motion for new trial, a statement that the motion should in all things be overruled except in a certain portion, and said order overruling said motion further states "Except in this respect the motion to set aside the judgment of the court and the verdict of the jury rendered herein on the 23rd day of July A. D., 1946 is in all things overruled," which indicates that the court treated the date of his final judgment to be the 23rd of July A. D. 1946. All parties being in court at the time and agreeing to the change; no harm shown to have been received by either party; nor nothing would have been gained by either party in having said motion refiled after it had been overruled. We are therefore unwilling to dismiss this appeal, in the divorce case, under the circumstances shown.

We do not find any merit in the motion to dismiss the appeal in the cancellation of the trust case because the trial on the pleas of privilege were before the court, wherein a separate judgment was entered overruling said pleas before any issues were submitted to the jury on the merits; and even though the court referred to the pleas of privilege in his judgment on the merits yet no issues were submitted to the jury on the pleas of privilege. After the first order was entered overruling the pleas of privilege by the court the appellants duly excepted and gave notice of appeal, hence no motion for new trial is necessary to perfect the appeal on the pleas. Rule 385, T.R.C.P.

Since we are sustaining the pleas and ordering the suit for cancellation of the trust transferred to Deaf Smith County where the land lies and where all the defendants state in their pleas that they reside. The wheat which the court undertook to partition in his original judgments and amendment thereto was really the property of the trustee as provided under the trust.

124

The appellants filed their motion for instructed verdict and also motion for judgment non obstante veredicto which were overruled by the court. We find the exception in Rule 324 applies to this case as laid down by the Supreme Court in the recent case of Barron et al. v. James, 198 S.W.2d 256 and that the ruling in said case grants the appellants authority to perfect appeal on this plea of privilege.

We find that section 14 of Article 1995 is also controlling on the pleas of privilege filed herein. The protection of this important statute which is designed to safeguard the legal title of real estate, we deem, is far more important than allowing a party to enjoy the privilege of trying two law suits together in the county wherein the plaintiff resides, to wit: a suit for divorce and partition of property owned by the parties. Second, a suit for the cancellation of the legal title to real estate which is vested in a third person to wit, a trustee, who lives in the county where the land lies and being another county from that of the plaintiff's residence.

The judgment of the trial court granting a divorce is reversed and remanded. The judgment of the trial court overruling the defendants' pleas of privilege is reversed, and judgment here rendered ordering the case transferred to the District Court of Deaf Smith County.